# Exhibit 1

# The Chicago Council of Lawyers Evaluation Report:

## Judges Seeking Retention in the November 2014 General Election
### and

## Judicial Candidates Seeking to Fill Judicial Vacancies

September 15, 2014

The Chicago Council of Lawyers, in this report, releases its evaluation of the judges seeking retention in the November 4th general election. We also include in this report our evaluation of the candidates who won their primary election held in March 2014 and who are on the November ballot.

**EVALUATION METHODOLOGY FOR RETENTION CANDIDATES**

The criteria for the Council's evaluations are whether the retention candidate has demonstrated the ability to serve on the relevant court in the following categories:

- fairness, including sensitivity to diversity and bias

- legal knowledge and skills (competence)

- integrity

- experience

- diligence

- impartiality

- judicial temperament

- respect for the rule of law

- independence from political and institutional influences

- professional conduct

- character

- community service

If a candidate has demonstrated the ability to perform the work required of a judge in all of these areas, the Council assigns a rating of "qualified." If a candidate has demonstrated excellence in most of

these areas, the Council assigns a rating of "well qualified."  If a candidate has demonstrated excellence in all of these areas, the Council assigns a rating of "highly qualified."  If a candidate has not demonstrated that he or she meets all of the criteria evaluated by the Council, the Council assigns a rating of "not qualified."

As part of the evaluation process, we require candidates to provide us with detailed information about their backgrounds, including any complaints filed against them with the Attorney Registration and Disciplinary Commission ("ARDC") or the Judicial Inquiry Board ("JIB").

In conducting these evaluations, the Council has participated in a joint investigation and interview process with the Alliance of Bar Associations for Judicial Screening ("Alliance").  The Alliance includes the following bar associations: Asian American Bar Association, Black Women Lawyers Association, Chicago Council of Lawyers, Cook County Bar Association, Decalogue Society of Lawyers, Hellenic Bar Association, Hispanic Lawyers' Association of Illinois, Illinois State Bar Association, Lesbian and Gay Bar Association of Chicago, Puerto Rican Bar Association, and the Women's Bar Association of Illinois.

The Council, in addition to participating in the evaluation process with the Alliance, also utilized the research conducted by the Judicial Performance Commission of Cook County (JPC). The JPC does not evaluate judges for the purpose of voter education.  Rather, the JPC is a group of lawyers and non-lawyers who utilize electronic surveys and phone interviews with lawyers who have filed appearance forms in the courtrooms of those judges being evaluated within the past three years.  There are additional interviews with judges, litigants, and others with professional experience with the judges seeking retention.  The JPC utilizes its research results to prepare a research summary for each judge, containing strengths and weaknesses of the judge, and if appropriate a judicial performance improvement plan consisting of such suggestions as peer mentoring, court watching, and continuing education.  The JPC reports are shared with the judges being evaluated, their presiding judges, and with the Chief Judge of the Circuit Court.  The JPC will oversee a court watching program for these judges and will re-evaluate the judges within three years.  The JPC shares its research results and findings with bar groups and others doing evaluations for the retention elections.

The Council's evaluation process includes:

(1)    a review of a written informational questionnaire provided to the Alliance  by the candidate, including details of the candidate's career and professional development and information on any complaints filed against the candidate with the JIB or the ARDC;

(2)    a review of the candidate's written responses to the supplemental essay questionnaire;

(3)    interviews of judges, attorneys, and others with personal knowledge about the candidate, including those who have and those who have not been referred to the Alliance by the candidate, and not restricted to Council members;

(4)    a review of the candidate's professional written work, where available;

(5)    an interview of the candidate done jointly with the Alliance;

(6)    review of any information concerning the candidate provided by the ARDC or the JIB;

2

(7)     a review of any other information available from public records, such as the Board of Election Commissioners and prosecutorial agencies; and

(8)     an evaluation of all the above materials by the Council's Judicial Evaluation Committee;

(9)     submission of the proposed evaluation and write-up to the candidate prior to its public release, to provide an opportunity for comment, correction, or reconsideration.

The Council places special importance on interviews with attorneys who practice before the judge, particularly those who were not referred to the Council by the candidate.  Most evaluations are based on information gathered and interviews held during the past few months.

In evaluating candidates, the Council expresses written reasons for its conclusions.  Without knowing the reason for a recommendation concerning a candidate, the public cannot use the bar's evaluations intelligently to draw its own conclusions.

## THE IMPORTANCE OF THE RETENTION ELECTIONS

The retention elections provide the voter with an opportunity to remove those judges whose judicial performance has been, in some respect, unsatisfactory.  Retention elections provide the only practical opportunity for the voters as a whole to focus on the performance of judges, with a realistic opportunity to defeat those candidates who deserve to be defeated.

## EVALUATION METHODOLOGY FOR JUDICIAL CANDIDATES IN CONTESTED ELECTIONS

Judicial candidates seeking election must run for specific vacancies.  Candidates seeking election to the Circuit Court – which is the County's trial-level court for both civil and criminal matters – may run in either a countywide or a subcircuit race.  Legislation creating the subcircuits provides that approximately one-third of the judges are elected by voters of the entire County, and each of the remaining judges elected by voters runs in one of fifteen geographical districts into which the County has been arbitrarily divided. Once elected, there is no distinction between a "countywide" judge and a "subcircuit" judge.  Either kind can be assigned to any judicial post in the County.

The Council rates candidates as "*highly qualified*," "*well qualified*," "*qualified*," or "*not qualified*." If a candidate refuses to submit his or her credentials to the Council, that candidate is rated "*not recommended*" unless the Council is aware of credible information that would justify a "not qualified" rating. Because we believe a willingness to participate in bar association and other public evaluations is a key indicator of fitness for public office, no candidate who refuses to be screened can be found "qualified."

We apply higher standards to candidates for the Supreme Court and the Appellate Court. Because these Courts establish legal precedents that bind the lower courts, their work has a broad impact on the justice system.  Moreover, qualities of scholarship and writing ability are more important to the work of the Supreme and Appellate Court justices than they are to satisfactory performance as a trial judge.

3

The Council does *not* evaluate candidates based on their substantive views of political or social issues. Nor do we take into account the particular race in which a candidate is running or the candidates against whom a candidate is running. We apply a uniform standard for all countywide and subcircuit elections because judges elected through either method can be assigned to any judicial position in the Circuit Court.

It should be noted that a lawyer might be performing well or even very well without being qualified to be a judge. A good lawyer may be unqualified to be a judge, for instance, because of a narrow range of prior experience, limited trial experience, or limited work doing legal research and writing. A lawyer may have the temperament and intelligence to be a judge without yet having worked in a position that would allow the candidate to demonstrate that capacity. Accordingly, it should be recognized and expected that we will rate some good lawyers "not qualified."

### Judges Seeking Retention in the November 2014
### General Election

**Judge Mauricio Araujo--Qualified**

Prior to becoming a judge, Mauricio Araujo was in-house counsel for American Family Insurance. In 1996, Judge Araujo was an attorney at the Chicago Housing Authority. Before that, in 1995, he was an associate at Cohn, Lambert, Ryab & Schneider after moving on from associate attorney general hearing Workers' Compensation cases.

Judge Araujo is currently hearing Felony Narcotics cases at the Criminal Courts Building at 26th and California. Judge Araujo's previous judicial assignments included multiple assignments in the First Municipal District in 2008 and hearing Independent Orders of Protection cases in 2011.

Judge Araujo is considered to be a diligent and capable jurist with good legal ability. He has been successful as a judge in learning new areas of law. He is praised for his patience on the bench, particularly with unrepresented parties. The Council finds him Qualified for retention.

**Judge Edward A. Arce--Qualified**

Prior to becoming a judge, Edward A. Arce had been a partner at the general civil litigation firm Whitcup & Acre since 1986. Judge Arce is currently assigned to the Domestic Relations Division in the Daley Center as a trial judge. Judge Arce's previous judicial assignments include the Domestic Relations Division of the Sixth Municipal District in Markham from 2008 until March 2014. Judge Arce is considered to have good legal ability and courtroom management skills. He is praised for his temperament in dealing with unrepresented parties appearing before him. The Council finds him Qualified for retention.

**Judge Andrew Berman—Well Qualified**

Prior to becoming a judge, Andrew Berman was an Assistant Cook County Public Defender from 1979 to 1996. Beforehand, he was an assistant appellate defender for four years. Judge Berman has been assigned

since 2007 to the Juvenile Justice Division. Judge Berman has also served in the Chancery Division. Judge Berman is considered to have very good legal ability and is widely respected for his legal knowledge.  He serves as a mentor to other judges and serves as the acting Presiding Judge when Presiding Judge Toomin is unavailable.  He is especially praised for his professionalism.  His temperament is considered to be excellent and he is praised for the way he manages his courtroom.  His rulings are considered to be well-reasoned and he spends the necessary time explaining his rulings to the parties appearing before him.  He is active in court reform efforts.  The Council finds him Well Qualified for retention.

**Judge Margaret Ann Brennan--Qualified**

Prior to becoming a judge, Margaret Ann Brennan was Assistant General Counsel for Exelon Business Services from 1994 to 2002, when she was elected to the bench. In 1989, Judge Brennan began as an Assistant Corporation Counsel for the City of Chicago after serving as an associate  with the general practice firm, Pierce, Yavitz & Eslick. Before that, she had been a legislative coordinator for the American Legal Services Institute and a law clerk for the ABA Private Bar Involvement Project.

Judge Brennan is currently assigned to a Commercial Calendar in the Law Division. Judge Brennan's previous judicial assignments include the Tax and Miscellaneous Remedies of the Law Division from 2011 to 2013, the Chancery Division from 2008 to 2011, and the Fifth Municipal district from 2002 to 2008.  Judge Brennan is considered to have good legal ability and is praised for her courtroom management skills.  A few respondents said she can get short-tempered on the bench but most lawyers appearing before her say she has a good temperament – appropriately holding lawyers to a high standard. The Council finds her Qualified for retention.

**Judge Eileen Brewer—Well Qualified**

Prior to becoming a judge, Eileen Brewer was the Chief Counsel to County Board President, John H. Stroger.  From 1988 to 1994, Judge Brewer served as the Assistant Corporation Counsel for the City of Chicago. Before that, she worked for a year as an associate attorney at Jenner & Block.  Judge Brewer was elected to the bench in 2002 and is currently sitting as a motion judge in the Law Division. She spent much of her judicial career in the Domestic Relations Division. Judge Brewer is considered to have very good legal ability and temperament.  Practitioners report that she has successfully made the transition from the Domestic Relations Division to the motion call in the Law Division.  She is praised for her court management skills and is reported fair to all parties.  The Council finds her Well Qualified for retention.

**Judge Janet Brosnahan--Qualified**

Prior to becoming a judge, Janet Brosnahan was a senior associate at the general practice firm James J Roche & Associates from 1997 to 2002. Judge Brosnahan began civil litigation work as an associate at Whitfield, McGann & Ketterman in 1994. Before that she had been an associate at the now dissolved Hugh J McCarthy & Associates firm for four years.

Judge Brosnahan is currently serving in the motions section of the Law Division. Judge Brosnahan's previous judicial assignments included civil and criminal cases in the Fifth Municipal District Courthouse from 2003 to 2014.

Many lawyers report that Judge Brosnahan has improved as a jurist over the past three years. Respondents praise her efforts to be fair while moving cases through her courtroom. They note that she is prepared, having read the materials submitted to her. Most respondents with current experience before Judge Brosnahan are positive in their assessments of her as a judge. The Council finds her Qualified for retention.

**Judge James Brown--Qualified**

Prior to becoming a judge, James Brown worked as a solo practitioner, and an Assistant Cook County State's Attorney. Judge Brown is currently sitting at the Central Bond Court and preliminary hearings. His previous judicial assignments were in the First and Fourth Municipal districts from 2005 until 2009 presiding over traffic, misdemeanor and bail hearings as well as misdemeanor trials and felony preliminary hearings. Judge Brown is considered to be a diligent judge with a good demeanor. He is reported to be prompt in starting his call, and is praised for being fair to all parties. The Council finds him Qualified for retention to his current position.

**Judge Thomas Byrne--Qualified**

Prior to becoming a judge, Thomas John Byrne served as an Assistant Cook County State's Attorney, and was the supervisor in the Third Municipal District for 5 years. Judge Byrne is currently sitting at the Criminal Division of Cook County. Judge Byrne's previous judicial assignments included the Misdemeanor Branch Court of the First Municipal Division from 2008 to 2013. Judge Byrne is considered to have good legal ability. He is praised for his knowledge of the law and for his courtroom management skills. He is reported to provide well-reasoned rulings. Respondents say he is fair to all parties and that he has a low-key, effective demeanor on the bench. The Council finds him Qualified for retention.

**Judge Diane Gordon Cannon – No Rating. Judge Cannon was unable to complete her evaluation.**

**Judge Evelyn B. Clay--Qualified**

Prior to becoming a judge, Evelyn B. Clay served as an Assistant Cook County State's Attorney. Judge Clay is currently a supervising judge hearing felony trials. She was elected to the Circuit Court in 1996. The results of her current evaluation show that Judge Clay is considered to have good legal ability and temperament. She is praised for her courtroom management skills. The Council finds her Qualified for retention.

**Judge Ann E. Collins-Dole--Qualified**

Prior to becoming a judge, Ann E. Collins-Dole served six years as Chief Assistant Corporation Counsel for the City of Chicago. She has also worked as a supervising attorney, trial attorney and municipal