IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES R. BROWN,<br><br>     Plaintiff,<br><br>v.<br><br>P. SCOTT NEVILLE, JR., *individually and in his official capacity as Chief Justice of the Illinois Supreme Court*, MARY JANE THEIS, *individually*, DAVID K. OVERSTREET, *individually and in his official capacity as Justice of the Illinois Supreme Court*, LISA HOLDER WHITE, *individually and in her official capacity as Justice of the Illinois Supreme Court*, JOY V. CUNNINGHAM, *individually and in her official capacity as Justice of the Illinois Supreme Court*, ELIZABETH M. ROCHFORD, *individually and in her official capacity as Justice of the Illinois Supreme Court*, MARY K. O'BRIEN, *individually and in her official capacity as Justice of the Illinois Supreme Court*, and SANJAY T. TAILOR, *in his official capacity as Justice of the Illinois Supreme Court*,<br><br>     Defendants. | Case No. 1:26-cv-1825<br><br>Hon. Senior Judge Joan Lefkow<br><br>**Plaintiff's Motion for Preliminary Injunction** |

**MOTION**

Pursuant to Fed. R. Civ. Pro. 65(a), Plaintiff, Judge James R. Brown, respectfully moves for a preliminary injunction ordering Defendants to re-instate Judge Brown to the Cook County Circuit Court consistent with the terms of Illinois Supreme Court Order M.R.003033 dated December 11,2025 (Compl. Ex. 5, February 18, 2026, ECF No. 1). As further set forth in the accompanying Plaintiff's

Memorandum of Law in Support of his Motion for Preliminary Injunction and Declaration, this injunction is necessary to avoid irreparable injury caused by Defendants' premature removal of Plaintiff from the bench without any notice or hearing and in violation of his First Amendment rights.

This motion was provided to opposing counsel on March 3, 2026. However, the parties were unable to reach an agreement.

Dated: March 9, 2026

Respectfully submitted,

Jeffrey M. Schwab
Brendan J. Philbin*
PA Bar No. 307276
Liberty Justice Center
7500 Rialto Blvd.
Suite 1-250
Austin, TX 78737
512-481-4400
jschwab@ljc.org
bphilbin@libertyjusticecenter.org

*admitted pro hac vice*

*Counsel for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES R. BROWN,<br><br>        Plaintiff,<br><br>v.<br><br>P. SCOTT NEVILLE, JR., *individually and in his official capacity as Chief Justice of the Illinois Supreme Court*, MARY JANE THEIS, *individually*, DAVID K. OVERSTREET, *individually and in his official capacity as Justice of the Illinois Supreme Court*, LISA HOLDER WHITE, *individually and in her official capacity as Justice of the Illinois Supreme Court*, JOY V. CUNNINGHAM, *individually and in her official capacity as Justice of the Illinois Supreme Court*, ELIZABETH M. ROCHFORD, *individually and in her official capacity as Justice of the Illinois Supreme Court*, MARY K. O'BRIEN, *individually and in her official capacity as Justice of the Illinois Supreme Court*, and SANJAY T. TAILOR, *in his official capacity as Justice of the Illinois Supreme Court*,<br><br>        Defendants. | Case No. 1:26-cv-1825<br><br>Hon. Senior Judge Joan Lefkow<br><br>**Plaintiff's Memorandum of Law in Support of his Motion for Preliminary Injunction** |

## INTRODUCTION

When speaking on matters of public concern as private citizens, public employees are protected by the First Amendment. *Pickering v. Board of Education* 391 U.S. 563 (1968). And public employees are entitled to due process under the Fourteenth Amendment—notice, explanation of evidence, and an opportunity to be heard—before termination. *Cleveland Board of Education v. Loudermill* 470 U.S.

1

532 (1985). The Illinois Supreme Court ignored both constitutional principles and the Illinois Constitution by unilaterally vacating Plaintiff's appointment as Cook County Circuit Court judge.

In December 2025, Plaintiff Judge James R. Brown came out of retirement to fill a vacancy on the Cook County Circuit Court. (Compl. ¶ 2, February 18, 2026, ECF No. 1; Decl. of Hon. James R. Brown in Supp. of Mot. for a Prelim. Injunc. ¶ 2, 10 (March 2, 2026)). Six weeks into his one-year term on the bench, Defendants ignored clearly established procedures set by the Illinois Constitution and terminated Judge Brown's appointment. (Compl. ¶ 3). While in retirement and before even applying for a recall position, Judge Brown had authored an opinion column and appeared on a podcast. (Compl. ¶ 22—23; Brown Decl. ¶ 4, 8). His words written and spoken in retirement irked two local bar associations. Those associations complained and the Defendants summarily removed vacated Judge Brown's recall appointment. (Compl. ¶ 37—39). By retaliating against Judge Brown and circumventing established Illinois procedure for removal of state court judges, Defendants violated Judge Brown's First and Fourteenth Amendment rights.

## Factual Background

Plaintiff Judge James R. Brown served 18 years as an Illinois state court judge. Judge Brown retired from the Illinois bench in December 2020. (Compl. ¶ 17, 21; Brown Decl. ¶ 2). During his 18-year tenure Judge Brown adjudicated thousands of motions, trials, preliminary hearings, and bond hearings. (Compl. ¶ 18; Brown Decl. ¶ 3). He maintained a spotless judicial record with no disciplinary actions nor

disqualifying events and was recognized for courtroom efficiency, legal precision, and judicial temperament. (Compl. ¶ 19, 20; Brown Decl. ¶ 3). During his 2014 judicial evaluation, the Chicago Bar Association noted that "Judge Brown is considered to be a diligent judge with a good demeanor." (Compl. Ex. 1 at 6).

Years after retiring from the bench, on September 5, 2025, Judge Brown published an opinion column on the John Kass News blog discussing the political use of the legal system against President Donald Trump.[1] (Compl. ¶ 22; Brown Decl. ¶ 4). On the date of its publication, the column was linked on RealClearPolitics.com. (Brown Decl. ¶ 8). On September 29th, Judge Brown was interviewed on the John Kass podcast.[2] (Compl. ¶ 23; Brown Decl. ¶ 4).

On September 22, 2025, Judge Brown received an email from the Illinois Judges Association calling on retired judges to apply for a temporary recall appointment to one of twelve vacancies on the Cook County Circuit Court. (Compl. ¶ 23, Ex. 3; Brown Decl. ¶ 5). The listed salary for the recall positions was $258,158. (Compl. Ex. 3) A recalled judge's pension would be suspended for the term and then adjusted for the additional year of service. (Compl. Ex. 3). The recall notice stated that three Illinois Supreme Court justices from Cook County would review the applications and make the judicial appointments. (Compl. Ex. 3). On October 3, 2025, Judge Brown submitted his application consisting of his resume and letter of interest.

---

[1] https://johnkassnews.com/his-judgement-cometh/
[2] The September 29, 2025 episode of the podcast on which Judge Brown appeared is available at https://podcasts.apple.com/us/podcast/chicago-way-w-john-kass-a-retired-judge-on-how-a/id1081158077?i=1000729186834

(Compl. ¶ 33; Brown Decl. ¶ 6). He was approved for a recall appointment without any additional communications from the Illinois Supreme Court, including requests for documentation or interview. (Compl. ¶ 35; Brown Decl. ¶ 9). By an order dated December 11, 2025, the Illinois Supreme Court assigned Judge Brown to a one-year recall term beginning on December 15, 2025, and ending on December 7, 2026. (Compl. Ex. 5; Brown Decl. ¶ 10).

After Judge Brown's appointment, two local bar associations publicly criticized Judge Brown's September 5th article and September 29th podcast appearance— which took place during Judge's Brown's retirement—and called on the Illinois Supreme Court to remove him. (Compl. ¶ 37—40). On December 29, 2025, the Cook County Bar Association published a statement opposing Judge Brown's appointment, asserting that his statements ran afoul of the Illinois Code of Judicial Conduct. (Compl. ¶ 38). The Chicago Council of Lawyers addressed an open letter requesting the Illinois Supreme Court "exercise [its] discretion to reverse an order you entered on December 11, 2025 recalling [Judge Brown] to the bench for a year." (Compl. Ex. 7). Without any communication with Judge Brown—including any opportunity for Judge Brown to explain or defend himself, Defendants kowtowed to the wishes of these two groups.

On January 26, 2026, the Illinois Supreme Court unilaterally vacated Judge Brown's judicial appointment with a one sentence order. (Compl. Ex. 8). The Illinois Supreme Court issued an unsigned statement acknowledging that Judge Brown was removed because of his speech made in retirement as a private citizen. (Compl.

4

¶ 42). Without any prior notice from the Illinois Courts, Judge Brown received an informal phone call from his friend and Cook County Chief Circuit Judge Charles Beach on January 26, 2026, who mentioned Judge Brown's judicial appointment had been revoked. (Compl. ¶ 40; Brown Decl. ¶ 12). Judge Brown received no written notice of his termination other than a letter informing him that he owed back half his pay for the period in which he was fired, as he only served a portion of the pay period. (Compl. ¶ 45; Brown Decl. ¶ 13).

## LEGAL STANDARD

"To obtain a preliminary injunction, a plaintiff must establish that it has some likelihood of success on the merits; that it has no adequate remedy at law; and, that without relief it will suffer irreparable harm." *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 364 (7th Cir. 2019) (internal quotation omitted). Once a plaintiff passes this threshold, the court must weigh the harm the plaintiff would suffer without an injunction against the harm the defendant would suffer from it, while also considering whether the public interested is served by the injunction. *Id.* The Seventh Circuit employs a "sliding scale" approach to this balancing: "if a plaintiff is more likely to win, the balance of harms can weigh less heavily in its favor, but the less likely a plaintiff is to win the more that balance would need to weigh in its favor." *Id.*

5

## ARGUMENT

### I. Judge Brown is likely to prevail on the merits.

### A. Defendants retaliated against Judge Brown's free speech.

"The First Amendment limits the ability of a public employer to leverage the employment relationship to restrict, incidentally or intentionally, the liberties employees enjoy in their capacities as private citizens." *Garcetti v. Caballos*, 547 U.S. 410, 419 (2006). The Seventh Circuit applies the two-part *Connick-Pickering* test to determine whether a public employee's speech is protected by the First Amendment. *Coady v. Steil*, 187 F.3d 727, 731 (7th Cir. 1999) "First, the court must determine whether the plaintiff's speech addressed a matter of public concern." *Id.* (quoting *Connick v. Myers*, 461 U.S. 138 (1983)). If so, the plaintiff's First Amendment interest is balanced against the government employer's interest in providing efficient public services. *Id.* (citing *Pickering v. Board of Educ. of Twnshp. H.S. Dist. 205*, 391 U.S. 563 (1968). Judge Brown satisfies both requirements.

Judge Brown spoke as a private citizen on a matter of public concern. His speech was that of a private citizen—made as a retired judge before he even applied to return to the bench. Likewise, Judge Brown's speech was of a political nature. Political speech "clearly fits the definition of 'a matter of public concern.'" *Id.* (quoting *Connick* 461 U.S. at 145-49). Judge Brown clearly satisfies the first requirement of the *Connick-Pickering* test.

Judge Brown's protected speech had no impact on the operation of the Cook County Circuit Court. Nor did it disturb the three Cook County Justices – Defendant Justices Neville Jr., Theis, and Cunningham—at the time they

6

appointed Judge Brown to the bench despite his speech being conspicuously available by simple internet search. (Compl. Ex. 3; Brown Decl. ¶ 8). The government bears the burden of showing that the interest in workplace efficiency outweighs employees' free speech. *Coady* 187 F.3d. at 732. This balancing test is "necessary to ensure that public employers do not use authority over employees to silence discourse, not because it hampers public functions but simply because superiors disagree with the content of the employee's speech." *Rankin v. McPherson*, 483 U.S. 378, 384 (1987). The government's prediction of disruption must be reasonable, "pure speculation is not enough to meet the burden of proof." *Wainscott v. Henry*, 315 F.3d 844, 851 (7th Cir. 2003). Speculation that Judge Brown's speech—made as a retired judge before returning to the bench—will create inefficiency on the Cook County Circuit Court is unreasonable. And it is belied by Judge Brown's six weeks presiding there.

In his six weeks on the bench, Judge Brown heard over 1,000 cases in Cook County Traffic Court and adjudicated over 40 felony preliminary hearings in Cook County criminal court. (Brown Decl. ¶ 16). No complaints or allegations of bias were filed against Judge Brown despite this significant workload. (Brown Decl. ¶ 17). A judge's political ideology and opinions have no bearing on the fair and impartial adjudication of traffic offenses. Judge Brown's service at the Cook County Traffic Court actually makes it more efficient—he fills an otherwise vacant judicial seat in a "high volume courtroom." (Compl. Ex. 3 at 2). Judge Brown's speech did not affect the Cook County Circuit when he published it. It did not dissuade Defendants from

appointing him. And it will not impact the Court for the duration of his recall term. To suggest otherwise is unreasonable and mere speculation. Judge Brown is likely to prevail on his First Amendment retaliation claim.

### B. Defendants deprived Judge Brown of procedural due process when they fired him.

Defendants lacked the authority to summarily vacate Judge Brown's appointment and ignored established procedures for removing judges from the bench. By doing so, Defendants violated his right to procedural due process protected by the Fourteenth Amendment. To show a violation of procedural due process, a plaintiff must first show he possesses a cognizable liberty or property interest in his position. *Bradley v. Vill. of Univ. Park*, 59 F.4th 887, 902 (7th Cir. 2023). After establishing a property interest, he must show he was denied the "well-established" pre-deprivation procedures of "notice of the proposed deprivation, a statement of reasons, and an opportunity to be heard in response." *Id.* (quoting *Board of Regents v. Roth,* 408 U.S. 564, 569–70, (1972). Judge Brown shows both.

### i. Defendants deprived Judge Brown of a property interest in his employment as a Circuit Court Judge.

For due process purposes, property interest is "created and defined by existing rules or understandings that stem from an independent source such as state law." *Dibble v. Quinn*, 793 F.3d 803, 808 (7th Cir. 2015) (quoting *Roth,* 408 at 577). While state law guides the analysis, the existence of a protectable property interest is a question of federal law. *Id.* (citing *Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1 (1978)). "Where state law gives a benefit and creates a system of

nondiscretionary rules governing revocation or renewal of that benefit, the recipients have a secure and durable property right." *Cornelius v. LaCroix*, 838 F.2d 207, 210 (7th Cir. 1988). Nondiscretionary rules creating a liberty interest are typically prescribed by statutes requiring notice and an opportunity to be heard. *E.g. Casna v. City of Loves Park*, 574 F.3d 420, 425 (7th Cir. 2009) (holding liberty interest created by 65 ILCS 5/10-1-18(a)'s requirement that removal be "for cause upon written charges and after an opportunity to be heard in [her] own defense"). Even the Illinois Supreme Court recognizes that statutes "providing that an elected officer shall serve for a certain number of years and shall be removed only upon certain events" create a property interest in the position. *E. St. Louis Fed'n of Teachers, Local 1220 v. E. St. Louis Sch. Dist. No. 189 Fin. Oversight Panel,* 178 Ill. 2d 399, 417, 687 N.E.2d 1050, 1061 (Ill. 1997)

Judge Brown's appointment to the Cook County Circuit Court perfectly fits the mold of a position for a fixed length with specific procedures for removal. Judge Brown was appointed to a fixed, one-year term by Order of the Illinois Supreme Court. (Compl. Ex. 5). While the Illinois Constitution gives its Supreme Court the authority to assign retired judges to judicial service, nothing in the Illinois Constitution grants it the authority to unilaterally remove a sitting judge. Ill. Const., art. VI, § 15(a).[3]  The process of removing Illinois state judges is not

---

[3]  Defendants exceeded their authority by unilaterally vacating Judge Brown's judicial appointment. When a state officer performs acts under authority he does not have, a suit may be maintained against the officer and is not an action against the state of Illinois. Sovereign immunity does not apply. *Murphy v. Smith*, 844 F.3d

discretionary. The Illinois Constitution prescribes only two methods to remove
Circuit Court judges: impeachment by the legislature or by notice and public
hearing at the Illinois Courts Commission. Ill. Const., art. IV, §§ 14, 15(e). Judge
Brown's fixed judicial term subject to nondiscretionary removal procedures—
including notice and public hearing—prescribed by the Illinois Constitution
demonstrate his protected property interest in his judicial appointment.

### ii. Defendants denied Judge Brown any process before removing him from the bench.

Prior to his removal from the bench, Judge Brown received no notice nor
opportunity to be heard in violation of both the Illinois Constitution and the Due
Process requirements of the United States Constitution. "A judge shall accord to
every person who has a legal interest in a proceeding . . . the right to be heard
according to law." Ill. Code of Jud. Conduct, Rule 2.6(A). Despite this charge to the
Illinois judiciary and clear procedures to remove a judge in Illinois, Defendants
removed Judge Brown without an iota of process. The Illinois legislature did not
impeach Judge Brown. The Courts Commission did not conduct a public hearing
and did not subsequently decide that he should be removed. Instead, in response to
political complaints from bar associations, Defendants unilaterally vacated Judge
Brown's assignment without authority and with a one-sentence order.

Judge Brown is likely to prevail in this matter. Defendants violated Judge
Brown's First Amendment right. They removed Judge Brown from the bench in

---

653, 658 (7th Cir. 2016) (citing *Healey v. Vaupel*, 549 N.E.2d. 1240, 133 Ill. 2d 295
(Ill. 1990)).

retaliation for his protected speech—made in retirement as a private citizen on a matter of public concern. Defendants cannot show this speech disrupted the Cook County Circuit Court. Even Defendants' mere speculation of disruption is betrayed by the six weeks Judge Brown served—adjudicating thousands of cases without complaint or accusation of bias. (Brown Decl. ¶ 16, 17). His service made the court more efficient. Still, Defendants ignored judicial removal procedures in the Illinois Constitution. Judge Brown was provided no notice, no hearing, and no due process rights as required by the Fourteenth Amendment. (Brown Decl. ¶ 13—14). Judge Brown's hasty removal was "simply because superiors disagree with the content of the employee's speech." *Rankin* 483 U.S. at 384. Judge Brown and meets the first requirement for preliminary injunction.

## II. Judge Brown will suffer irreparable harm without injunctive relief.

"Under Seventh Circuit law, irreparable harm is presumed in First Amendment cases." *Int'l Ass'n of Fire Fighters, Local 365 v. City of E. Chi.*, 56 F.4th 437, 451 (7th Cir. 2022) (citing *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006)). "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). By demonstrating that Defendants violated the First Amendment by vacating Judge Brown's appointment in retaliation for speech made as a private citizen on a matter of public concern, Judge Brown endures irreparable harm if not returned to the bench.

### III.  The balance of the equities favors Judge Brown.

Judge Brown's interests are burdened without equitable relief. Defendants' interests do not suffer with an injunction. State actors suffer "no harm at all" when prevented from violating constitutional rights. *See Christian Legal Soc'y*, 453 F.3d at 867. Operational efficiency generated by reinstatement to a position supports an injunction in favor of terminated employees. *NLRB v. Electro-Voice, Inc.*, 83 F.3d 1559, 1573 (7th Cir. 1996) (weighing a 28.3% increase in a plant's labor efficiency after reinstatement of dismissed workers in the favor of granting an injunction). Like the fiberglass plant in *Electro-Voice*, the Cook County Circuit Court is more productive with Judge Brown reinstated. Judge Brown was appointed because "public necessity so require[d]" filling excessive vacancies. (Compl. Ex. 5). During his short tenure, Judge Brown heard over 1,000 cases in Cook County Traffic Court and adjudicated over 40 felony preliminary hearings in Cook County criminal court. (Brown Decl. ¶ 16). During the pendency of this litigation, a reinstated Judge Brown will share the workload of the high volume Cook County Circuit Court and benefit the Illinois judiciary and Cook County citizens. The balancing of equities favor Judge Brown.

### IV.  The public is served by protecting constitutional rights.

In addition to making the Cook County Circuit Court more efficient, an injunction protects the public's interest by making the justices of the Illinois Supreme Court follow the law. "Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures." *Morton v. Ruiz*, 415 U.S.

199, 235 (1974). "When a government official or agency lawfully prescribes rules and procedures, these are binding on the government as well as on its citizens." *Pearce v. Dir., Office of Workers' Comp. Programs*, 647 F.2d 716, 726 (7th Cir. 1981) (citations omitted). The process and authority to remove a sitting Illinois judge through the legislature or Courts Commission is clearly set by the Illinois Constitution. Ill. Const., art. IV, §§ 14, 15(e). An injunction ordering Judge Brown to return to the Cook County Circuit Court bench forces Defendants to follow its procedures, rather than ignore the Illinois Constitution. And "injunctions protecting First Amendment freedoms are always in the public interest." *Christian Legal Soc'y*, 453 F.3d at 859. A preliminary injunction protects Judge Brown's Due Process and First Amendment rights and is in the public interest.

## Conclusion

By removing Judge Brown from his position as Cook County Judge because of his protected speech with no due process, Defendants have violated Judge Brown's constitutional rights. Therefore, Judge Brown respectfully requests that this Court grant his motion for preliminary injunction ordering Defendants to reinstate Judge Brown to the Circuit Court of Cook County while this Court considers the merits of this case.

Dated: March 09, 2026

Respectfully submitted,

_Brendan J. Philbin_

Jeffrey M. Schwab
Brendan J. Philbin*
PA Bar No. 307276
Liberty Justice Center
7500 Rialto Blvd.
Suite 1-250
Austin, TX 78737
512-481-4400
jschwab@ljc.org
bphilbin@libertyjusticecenter.org

*admitted pro hac vice*

*Counsel for Plaintiff*

14

## CERTIFICATE OF SERVICE

I certify that the foregoing documents were filed electronically with the Court's Case Management/Electronic Case Filing (CM/ECF) system. The Court and/or Clerk of Court may serve and give notice to counsel by CM/ECF electronic transmission.

The 9th day of March 2026.

*Brendan J. Philbin*

Brendan J. Philbin
LIBERTY JUSTICE CENTER
7500 Rialto Blvd.
Suite 1-250
Austin, TX 78735
(512) 481-4400
bphilbin@libertyjusticecenter.org

*\* Admitted pro hac vice*
*Attorney for Plaintiff*

15