**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JAMES R. BROWN, | ) | |
| | ) | Case No. 1:26-cv-1825 |
| Plaintiff, | ) | |
| | ) | Judge Edmond E. Chang |
| v. | ) | |
| | ) | Magistrate Judge Jeannice W. Appenteng |
| P. SCOTT NEVILLE, JR., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' COMBINED MEMORANDUM IN SUPPORT OF**
**THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND**
**IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

INTRODUCTION………………………………………………………………………………1

BACKGROUND……………………………………………………………………………...3

      *The Illinois Supreme Court's Authority to Issue Temporary Judicial Assignments*……..3

      *The Illinois Code of Judicial Conduct*……………………………………………..4

      *Factual Background of this Case*……………………………………………….6

ARGUMENT………………………………………………………………………...9

    I.    Judge Brown's Complaint Should Be Dismissed………………………………9

        A.    This Court should abstain from jurisdiction over this matter based on principles of federalism and comity……………………………………10

        B.    The Justices are entitled to judicial immunity…………………………11

        C.    Judge Brown cannot seek injunctive relief against the Justices under Section 1983………………………………………………………13

        D.    Judge Brown has failed to state a claim………………………………..14

            *1.*    *Judge Brown has failed to state a claim for a due process violation because he does not have a property interest in his temporary recall assignment*..…………………………...14*

            *2.*  *Judge Brown has not stated a claim for a First Amendment violation because the Illinois Supreme Court's interest in maintaining public confidence in the judiciary outweighs Judge Brown's First Amendment interest.……………………..15*

            *3.*    *The Justices are at least entitled to qualified immunity*……….20

    II.    Judge Brown's Motion for Preliminary Injunction Should Be Denied………..21

        A.    Judge Brown does not have a likelihood of success on the merits…….22

        B.    Judge Brown cannot show irreparable harm…………………………...23

        C.    The balance of harms weighs against entering a preliminary injunction………………………………………………...23

CONCLUSION………………………………………………………………………...24

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................ 9

*Boucher v. Sch. Bd.*, 134 F.3d 821 (7th Cir. 1998) ................................................ 21, 22

*Bradley v. Fisher*, 80 U.S. 335 (1871) ..........................................................................11

*Brokaw v. Mercer County*, 235 F.3d 1000 (7th Cir. 2000) ...........................................11

*Cole v. Milwaukee Area Tech. College Dist.*, 634 F.3d 901 (7th Cir. 2011) ................ 14

*Concrete Pipe & Prods. v. Constr. Laborers Pension Trust*, 508 U.S. 602 (1993)........ 19

*Courthouse News Serv. v. Brown*, 908 F.3d 1063 (7th Cir. 2018)....................... 3, 10, 24

*Davis v. Tarrant Cty.*, 565 F.3d 214 (5th Cir. 2009)..................................................... 12

*Del. State Sportsmen's Ass'n. Inc. v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194 (3d Cir. 2024) .................................................................................................................. 24

*Ennenga v. Starns*, 677 F.3d 766 (7th Cir. 2012) ........................................................... 4

*GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357 (7th Cir. 2019)..................... 22

*Greer v. Amesqua*, 212 F.3d 358 (7th Cir. 2000) ........................................... 16, 18, 19

*Guarino v. Larsen*, 11 F.3d 1151 (3d Cir. 1993) .....................................................11, 15

*Haas v. Wisconsin*, 109 Fed. App'x 107 (7th Cir. 2004) ..........................................11, 13

*Ill. Republican Pty. v. Pritzker*, 973 F.3d 760 (7th Cir. 2020)................................ 22, 24

*J.B. v Woodard*, 997 F.3d 714 (7th Cir. 2021)............................................................ 10

*Kiddy-Brown v. Blagojevich*, 408 F.3d 346 (7th Cir. 2005).......................................... 15

*Kilborn v. Amiridis*, 131 F.4th 550 (7th Cir. 2025) ..................................................... 16

*Lalowski v. City of Des Plaines*, 789 F.3d 784 (7th Cir. 2015)...................................... 16

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) .................................................. 20

*Marro v. Bartlett*, 389 N.E.2d 808, 809 (N.Y. 1979) .................................................. 15

*Martinez v. Winner*, 771 F.2d 424 (10th Cir. 1985) .................................................11, 12

*Mathews v. Eldridge*, 424 U.S. 319 (1976)................................................................. 13

*Mazurek v. Armstrong*, 520 U.S. 968 (1997)............................................................... 21

*Mich. v. U.S. Army Corps of Eng'g*, 667 F.3d 765 (7th Cir. 2011) .............................. 24

*Money v. Pritzker*, 453 F. Supp. 3d 1103 (N.D. Ill. 2020)........................................... 24

*Orr v. Shicker*, 953 F.3d 490 (7th Cir. 2020)........................................................ 21, 23

*Payne v. County of Cook*, No. 15 C 3154, 2016 WL 1086527 (N.D. Ill. March 21, 2016).......... 12

*Pearson v. Callahan*, 555 U.S. 223, 231 (2009) ......................................................... 20

*Ponterio v. Kaye*, Case No. 06 Civ. 6289, 2007 WL 2493696 (S.D.N.Y. Sep. 5, 2007)............... 21

*Primm v. Cty. of DuPage*, No. 92 C 3726, 1993 WL 338762 (N.D. Ill. Sept. 2, 1993)............... 12

*Pulliam v. Allen*, 466 U.S. 522 (1984) ...................................................................... 13

*Rizzo v. Goode*, 423 U.S. 362 (1976)......................................................................... 24

*Schwartz v. Mayor's Comm. on the Judiciary*, 816 F.2d 54 (2d Cir. 1987) ................. 15

*Siefert v. Alexander*, 608 F.3d 974, 979-80 (7th Cir. 2010) ........................... 1, 16, 18, 24

*Smith v. Finkley*, 10 F.4th 725 (7th Cir. 2021) .......................................................... 20, 21

*Sparks v. Kentucky Character & Fitness Comm'ee,* 818 F.2d 541 (6th Cir.1987), *vacated*, 484 U.S. 1022, *aff'd on reconsideration*, 859 F.2d 428 (6th Cir. 1988) .......................... 12

*W.A. Mack, Inc. v. Gen. Motors Corp.*, 260 F.2d 886 (7th Cir. 1958) ...................................... 22

*Weiland v. Loomis*, 938 F.3d 917 (7th Cir. 2019) ........................................................ 21

*Winter v. Nat. Res. Def. Counc.*, 555 U.S. 7 (2008) ...................................................... 22

## Statutes

42 U.S.C. § 1983 ................................................................................................. *passim*

## Rules

Fed. R. Civ. P. 12(b)(1) ....................................................................................... 9

Fed. R. Civ. P. 12(b)(6) ....................................................................................... 9

Fed. R. Civ. P. 12(h)(3) ....................................................................................... 9

Fed. R. Evid. 201(b)(2) ....................................................................................... 4

Fed. R. Evid. 902(6) ........................................................................................... 4

Ill. Code Jud'l Conduct, Preamble and Scope ............................................................. 4

Ill. Code Jud'l Conduct, R. 1.2 ........................................................................... 5, 18

Ill. Code Jud'l Conduct, 2.3 ................................................................................... 5

Ill. Code Jud'l Conduct, 2.4 ................................................................................... 5

Ill. Code Jud'l Conduct, R. 2.10 ............................................................................. 5

Ill. Code Jud'l Conduct, R. 2.11 ........................................................................... 6, 19

Ill. S. Ct. R. 21(e) ............................................................................................. 6

## Constitutional Provisions

Ill. Const. art. VI, § 13(a) ............................................................................... 1, 2, 4

Ill. Const. art. VI, § 15 .................................................................................. 4, 13, 14

Ill. Const. art. VI, § 16 ..................................................................................... 3, 13

U.S. Const. amend. I ....................................................................................... 2, 15-20

U.S. Const. amend. V ........................................................................................... 13

U.S. Const. amend. XIV ................................................................................... 1, 2, 13-15

**INTRODUCTION**

As courts have repeatedly recognized, it is "beyond doubt that states have a compelling interest in developing, and indeed are required by the Fourteenth Amendment to develop, [] independent-minded and faithful jurists." *Siefert v. Alexander*, 608 F.3d 974, 979-80 (7th Cir. 2010). To this end, and pursuant to its powers under Article VI, Section 13(a) of the Illinois Constitution, the Illinois Supreme Court has adopted rules of conduct for its judiciary. These rules of conduct require judges not only to avoid impropriety and demonstrate impartiality and independence in their actions and speech, but to take all necessary steps to avoid the *appearance* of impropriety, including disqualifying themselves from particular matters when a reasonable person would question their impartiality. The Illinois Supreme Court is also authorized to take temporary measures in its discretion to fill judicial vacancies in its courts, including by recalling retired judges to temporary assignments on the bench; neither the Code of Judicial Conduct nor the Illinois Constitution prescribe the precise way this is to be accomplished.

In September 2025, the Illinois Supreme Court issued a call to retired judges to be assigned temporarily to the Circuit Court of Cook County to provide assistance during a period of time when there were a number of judicial vacancies. Retired Cook County Circuit Court Judge James R. Brown applied and was assigned to a one-year recall term that began on December 15, 2025. In late December 2025 and early January 2026, the Illinois Supreme Court received public statements from two local bar associations objecting to Judge Brown's temporary recall assignment based on statements Judge Brown had made in a blog post and on a podcast in September 2025—just before his October 2025 application and his December 2025 assignment.

Identifying himself by his judicial title, Judge Brown referred in his blog post to "George Soros-funded progressive prosecutors who waged lawfare against President Trump;" made assertions like "American citizens have been senselessly murdered by illegal aliens" and

"[t]ampons were put in boys' bathrooms at some schools;" and attacked the "Leftist," "conflicted" judges who had found President Trump civilly or criminally liable as having "assist[ed]" the prosecutors in the adjudication of those matters. *See* Dkt. 1, Ex. 2. Judge Brown repeated these statements in a subsequent podcast appearance. The Cook County Bar Association expressed its view that Judge Brown's statements "undermine[d] confidence in the entire justice system" and reflected "biases against marginalized communities." *Id.*, Ex. 6 at 3. For its part, the Chicago Council of Lawyers expressed its view that Judge Brown's "wildly inappropriate" statements "should preclude him from ever sitting in judgment of others again as a member of the Cook County judiciary." *Id.*, Ex. 7 at 2-3.

After considering the gravity of Judge Brown's statements and the bar associations' concerns, the Supreme Court of Illinois vacated Judge Brown's recall assignment on January 26, 2026, pursuant to its power under Article VI of the Illinois Constitution. On February 18, 2026, Judge Brown brought this Section 1983 lawsuit against current and former Justices of the Illinois Supreme Court, alleging that they violated his First Amendment and due process rights and seeking injunctive and declaratory relief and monetary damages. Dkt. 1. Nineteen days later, Judge Brown filed a motion for a preliminary injunction. Dkt. 7.

Judge Brown's claims should be dismissed for several reasons. As an initial matter, under well-established principles of federalism and comity, this Court should abstain from exercising jurisdiction over the Illinois Supreme Court's exercise of its authority to manage its courts. Second, even if the Court were to consider Judge Brown's lawsuit, the Justices are entitled to absolute judicial immunity, and Section 1983 explicitly precludes the issuance of an injunction against a judge. And, in any event, Judge Brown has not stated a procedural due process or First Amendment claim because he possesses no property interest in the temporary recall assignment, and the Illinois

Supreme Court's "compelling interest" in maintaining the appearance of judicial impartiality outweighs his First Amendment interest in his statements. At a minimum, the Justices are entitled to qualified immunity from Judge Brown's damages claim, they did not violate any of Judge Brown's clearly established constitutional rights. Accordingly, Judge Brown's complaint should be dismissed.

Plaintiff's motion for preliminary injunction should likewise be denied. First, Section 1983's bar on injunctive relief against judges categorically prohibits preliminary injunctive relief, as well. Moreover, Judge Brown has no likelihood of success on the merits for the same reasons and cannot show irreparable harm. Finally, the balance of harms dips decidedly in the Defendants' favor. The injunction sought here would "directly affect[] the administration of the state courts" and offend "principles of equity, comity, and federalism," thus causing substantial harm to the public interest. *Courthouse News Service v. Brown*, 908 F.3d 1063, 1070, 1065 (7th Cir. 2018). The Court should decline Plaintiff's invitation to meddle with the administration of Illinois state courts, deny Plaintiff's preliminary injunction motion, and dismiss Plaintiff's complaint.[1]

## BACKGROUND

### *The Illinois Supreme Court's Authority to Issue Temporary Judicial Assignments*

Article VI of the Illinois Constitution provides that "[g]eneral administrative and supervisory authority over all courts is vested in the Supreme Court and shall be exercised by the Chief Justice in accordance with its rules." Ill. Const. art. VI, § 16. Among other methods to fill vacancies, Article VI permits the Illinois Supreme Court to assign any retired judge to judicial service, for which the judge receives the applicable compensation in lieu of retirement benefits.

---

[1] In its order setting the instant briefing schedule, the Court directed the parties to "set forth" in their briefs "whether they anticipate calling witnesses for the hearing" on Plaintiff's motion for preliminary injunction. Dkt. 118. The Justices are considering whether they wish to call any witnesses for the May 6, 2026, hearing, and will provide an update in their reply brief in support of their motion to dismiss.

*Id.* § 15. Contrary to Judge Brown's assertions (Dkt. 7 at 9), neither the Illinois Constitution nor the Illinois Supreme Court Rules prescribe the way such "recall assignments"—or any other temporary assignment pursuant to circuit court vacancy—are to be terminated. *See* Ill. Const. art. VI, §§ 15, 16. The Justices of the Illinois Supreme Court have accordingly utilized their Article VI powers to make temporary recall assignments to fill vacancies in Illinois Circuit Courts. *See* <u>Exhibit 1</u>, Selected Orders of the Illinois Supreme Court.[2] And the Court has vacated such assignments at will, reflecting its Constitutional authority to manage its affairs. *Id.*; *see also* Ill. Const. art. VI, § 15.

### *The Illinois Code of Judicial Conduct*

Article VI of the Illinois Constitution also authorizes the Illinois Supreme Court to enact codes of conduct for its judges. Ill. Const. art. VI, § 13(a). In accordance with this power, the Illinois Supreme Court adopted the current iteration of the Illinois Code of Judicial Conduct (the "Code") in 2022. *See* Ill. S. Ct. Ord. No. M.R. 31329 (Jul. 1, 2022; eff. Jan. 1, 2023). The Code's Preamble sets forth the Code's overarching principle:

> An independent, fair, and impartial judiciary is indispensable to our system of justice.… Inherent in the Rules contained in the Code of Judicial Conduct [] are the precepts that judges, individually and collectively, must respect and honor the judicial office as a public trust and strive to maintain and enhance confidence in the legal system."

Code, Preamble and Scope. This principle is codified in Rule 1.2:

> A judge shall act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary and shall avoid impropriety and the appearance of impropriety.

---

[2] This court may take judicial notice of the Court's orders cited in and attached to this brief because they are public records "not subject to reasonable dispute." *Ennenga v. Starns*, 677 F.3d 766, 774 (7th Cir. 2012); Fed. R. Evid. 201(b)(2) (allowing judicial notice of facts "whose accuracy cannot reasonably be questioned"); Fed. R. Evid. 902(6) (official documents are self-authenticating).

4

*Id.*, Rule 1.2. In relevant part, the Code defines the terms "independence" and "impartiality" as follows:

> "Independence" means a judge's freedom from influence or controls other than those established by law. See Canons 1 and 4 and Rules 1.2, 3.1, 3.12, 4.1 and 4.3.
>
> "Impartial," "impartiality," and "impartially" mean absence of bias or prejudice in favor of, or against, particular parties or classes of parties, as well as maintenance of an open mind in considering issues that may come before a judge. See Canons 1, 2, and 4 and Rules 1.2, 2.2, 2.10, 2.11, 2.13, 3.1, 3.12, 4.1 and 4.3.

*Id.*, Preamble and Scope. Thus, the Code *requires* Illinois judges to safeguard not only their ability to adjudicate disputes in a fair, independent, and impartial manner, but the perception by the public (not only litigants) of the judiciary's fairness, independence, and impartiality. *Id.* As a comment to Rule 2.10 (which prohibits judicial statements on pending and impending cases) explains, its "restrictions on judicial speech are essential to the maintenance of the independence, integrity, and impartiality of the judiciary." *Id.*, Rule 2.10, cmt. 1.

Other Rules likewise emphasize the need for judges to remain—and to appear—impartial and independent. Rule 2.3 requires judges to perform judicial and administrative duties "without bias or prejudice" and to conduct proceedings "without manifesting bias or prejudice or engaging in harassment, based upon attributes including but not limited to race, sex, gender, gender identity, religion, national origin, ethnicity, pregnancy, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation." Code, Rule 2.3 (A), (B), (C) Moreover, "[a] judge must avoid conduct that may reasonably be perceived as prejudiced or biased." *Id.*, Rule 2.3, cmt. 2. Rule 2.4 provides that a "judge shall not convey or permit others to convey the impression that any person or organization is in a position to influence the judge." *Id.*, Rule 2.4; *see also id.* cmt. 1 ("Confidence in the judiciary is eroded if judicial decisionmaking is perceived to be subject to inappropriate outside influences.").

Importantly, Rule 2.11 requires disqualification "in any proceeding in which the judge's impartiality might reasonably be questioned," including where a reasonable question might arise as to whether the "judge has a personal bias or prejudice concerning a party or a party's lawyer." *Id.*, Rule 2.11(A)(1); *see also id.* cmt. 1 ("Under this Rule, a judge is disqualified whenever the judge's impartiality might reasonably be questioned, regardless of whether any of the specific provisions of paragraphs (A)(1) through (6) apply.").

***Factual Background of this Case***

Plaintiff Judge Brown (ret.) served as a Cook County Circuit Court Judge for 18 years and retired in 2020. Dkt. 1 ¶ 17, 21. On September 22, 2025, the Illinois Supreme Court issued a call for retired circuit court judges to apply for temporary recall assignments in the Circuit Court of Cook County. *Id.* ¶ 26. The notice specified that the Illinois Supreme Court would review the applications and recall judges to temporary assignments; the Chief Judge of the Circuit Court of Cook County would make the assignments per Illinois Supreme Court Rule 21(e). Dkt. 1 ¶ 32. Judge Brown submitted his application on October 3, 2025, and was assigned to a one-year recall term in Cook County Traffic Court; he began his assignment on December 15, 2025. *Id.* ¶ 33, 35; *id.*, Ex. 5.

Following Judge Brown's assignment, two Chicago-area bar associations submitted public objections to the Illinois Supreme Court regarding the assignment. Dkt. 1, Exs. 6, 7. The Cook County Bar Association and the Chicago Council of Lawyers expressed grave concerns with an article Judge Brown published on the John Kass News blog on September 5, 2025 (Dkt. 1, Ex. 2) (the "Article"), and his subsequent September 29, 2025, appearance on Mr. Kass's podcast (the "Podcast") to promote the article and ideas associated with it.[3] *See* Dkt. 1, Exs. 6, 7.

---

[3] The Podcast is available at https://podcasts.apple.com/us/podcast/chicago-way-w-john-kass-a-retired-judge-on-how-a/id1081158077?i=1000729186834 (last visited Apr. 1, 2026).

In the Article's byline, Judge Brown identified himself as "The Honorable Judge James R. Brown" and began the Article with a series of "declar[ations]" from "[t]his Honorable Court." Dkt. 1, Ex. 2 at 1. Judge Brown asserted that "[j]ustice awaits those who brazenly and viciously demonized the 77 million Trump supporters," going on to specify that "[a]ccountability, in one form or another, is coming to the George Soros-funded progressive prosecutors who waged 'lawfare' against President Trump." *Id.* (Later in the Article, Judge Brown included recently departed Cook County State's Attorney Kim Foxx in his apparent list of "Soros-funded prosecutors." *Id.* at 7.) Judge Brown asserted that "the scales of justice have tipped, the tables have turned, and Judgement Day is Coming." *Id.* at 3.

The Article expressed Judge Brown's opinions regarding a wide range of public issues and controversies, including the following statements:

"George Soros-funded progressive prosecutors … waged "lawfare" against President Trump … [that] sent shockwaves not only through the legal community but also through our system of justice." *Id.* at 2.

"We outlive the draconian Covid (*sic*) Lockdowns, and the [unspecified] Fauci lies." *Id.* at 3.

"The January 6th Committee findings were so partisan based and erroneous that President Biden was compelled to issue a preemptive pardon to all committee members." *Id.* at 4.

"Statues were erected in honor of 8 time convicted felon George Floyd." *Id.*

"In the summer of 2020, the BLM riots caused more than $1 billion dollars of damage." *Id.*

"[M]any of our institutions were falsely accused of systemic racism." *Id.*

"Biological men were allowed to participate in women's sports and allowed to use their bathrooms and locker rooms. Tampons were put in boys' bathrooms at some schools." *Id.*

"A United States Supreme Court nominee [U.S. Supreme Court Justice Ketanji Brown Jackson] could not articulate the definition of 'Woman' at her confirmation hearing." *Id.*

"American citizens have been senselessly murdered by illegal aliens." *Id.* at 5.

"[T]he most serious and dangerous threat ever directed at the American system of Justice is the use of lawfare by the Left. Lawfare is defined as a strategic use of the legal system as a tool to achieve a political objective. Lawfare has been waged by Soros-funded prosecutors and has had a chilling effect on our justice system. Using the law to destroy your political opponent or using the law to thwart the will of the People is un-American, unjust, unbecoming, untoward and illegal." *Id.*

"Progressive prosecutors have blatantly violated their oath to uphold the law." *Id.* at 6.

"Soros-funded and Trump-hating New York Attorney General Letitia James sued President Trump for civil fraud. The flimsy case was a blatant attempt by AG James to bankrupt President Trump and keep him off the campaign trail. With the assistance of Leftist Judge Arthur Engeron, President Trump was found liable." *Id.*

"Soros-funded New York District Attorney Alvin Bragg indicted President Trump on 34 felony counts of falsifying business records. With the assistance of conflicted Judge Juan Merchan, the case resulted in a conviction on all counts. However, the overwhelming consensus in the legal community is that this case will eventually be overturned on appeal." *Id.*

On January 26, 2026, the Illinois Supreme Court issued an order vacating Judge Brown's assignment. Dkt 1, Ex. 8.

In this lawsuit, Judge Brown claims that the order vacating his assignment violated his procedural due process and First Amendment rights. Dkt. 1. He seeks declaratory relief, injunctive relief in the form of an order compelling the Illinois Supreme Court to "restore Judge Brown to his position as Cook County Circuit Court Judge for the remainder of his term," and damages from the individual Justices. Dkt. 1 at 16. He has also filed a motion for preliminary injunction, asking this Court to order that he be restored to his position as judge for the remainder of this litigation. Dkt. 7 at 13.

8

## ARGUMENT

**I.      Judge Brown's Complaint Should Be Dismissed.**

Federal Rule of Civil Procedure 12(b)(1) provides that a party may move to dismiss a case based on "lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Pursuant to Rule 12(h)(3), "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action. Fed. R. Civ. P. 12(h)(3). A party may also move to dismiss a claim under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Section 12(b)(6) provides for dismissal of a complaint where the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

Here, Judge Brown's complaint should be dismissed because the Court should abstain from jurisdiction under well-established principles of federalism and comity; the Justices are entitled absolute judicial immunity; Section 1983 precludes injunctive relief against judicial defendants; and Judge Brown has not stated a claim under either the First or Fourteenth Amendment. Moreover, the Justices are entitled to qualified immunity from Judge Brown's damages claim.

### A.      This Court should abstain from jurisdiction over this matter based on principles of federalism and comity.

As an initial matter, this Court should abstain from jurisdiction over this matter based on principles of federalism and comity. As the Seventh Circuit explained in *J.B. v Woodard*, even if a recognized abstention doctrine is not an exact fit, abstention can still be appropriate because to "insist on literal perfection" (*i.e.,* as to abstention doctrines like *Younger* and *Rooker-Feldman*) based on a complaint's allegations "risks a serious federal infringement." 997 F.3d 714, 723 (7th Cir. 2021). The abstention doctrines' "underlying principles of comity, equity, and federalism counsel [courts] to abstain from exercising jurisdiction over [ ] § 1983 claims" where exercising

9

that jurisdiction would "reflect a lack of respect for the state's ability to resolve the issues properly before its courts." *Id.* at 724. Federal courts may "decline to exercise jurisdiction where denying a federal forum would clearly serve an important countervailing interest, including regard for federal-state relations." *Id.* at 723.

In *Courthouse News Service,* the Seventh Circuit rejected a news service's First Amendment challenge to state court procedures for public docketing, finding that it was "not appropriate for the federal courts" to "supervise … state court operations." 908 F.3d at 1074. Rather, "the state courts deserve the first opportunity to hear [] a constitutional challenge to their internal procedures." *Id*. at 1070. "When [a state court's] procedures are challenged as they have been here, the state courts should be given the first opportunity to determine precisely what [remedy] is required, appropriate, and feasible in a state court." *Id*. at 1071. "Principles of cooperation and comity weighed in favor of abstention so that state courts could craft an informed and proper balance between the state courts' legitimate institutional needs and the public's … substantial First Amendment interest." *Id.* at 1074 (internal quotation omitted).

Abstention is appropriate here for similar reasons. The relief Judge Brown seeks—damages for the Illinois Supreme Court's termination of his temporary recall assignment and an order directing the *Illinois Supreme Court* to reinstate him to the bench—"directly affects the administration of the state courts." *Id.* at 1070. Any order seeking to override the decision of the Illinois Supreme Court would obviously offend "principles of equity, comity, and federalism" (*id*. at 1065), and this Court should abstain accordingly.

**B.      The Justices are entitled to judicial immunity.**

Moreover, Judge Brown's claims against the Justices are barred by absolute judicial immunity. More than 150 years ago, the Supreme Court confirmed that judges cannot be sued for their judicial acts. *Bradley v. Fisher*, 80 U.S. 335, 351 (1871); *see also Brokaw v. Mercer County*,

235 F.3d 1000, 1015 (7th Cir. 2000) (absolute judicial immunity applies even when a judge's exercise of authority is "flawed by the commission of grave procedural errors"). No matter how "erroneous the act may have been" or how "injurious…it may have proved to the plaintiff," it cannot support a suit against a judge. *Bradley*, 80 U.S. at 347. Absolute judicial immunity applies unless: (1) "the suit challenges an action that is not judicial in nature" or (2) "the judge acted in the complete absence of all jurisdiction." *Haas v. Wisconsin*, 109 Fed. App'x 107, 113 (7th Cir. 2004). Even "administrative" acts that do not "concern the decision who shall win a case" are entitled to judicial immunity where they "directly concern[] the case-deciding process." *Martinez v. Winner*, 771 F.2d 424, 434 (10th Cir. 1985).

Judicial immunity applies here. In *Guarino v. Larsen*, the Third Circuit found that the Pennsylvania Supreme Court's termination of an assigned retired judge was a judicial act (for purposes of *Rooker-Feldman* abstention) where it had issued a second order affirming the termination. 11 F.3d 1151, 1159 (3d Cir. 1993); *see also id.* at 1162 (Nygaard, J., concurring) (the order terminating the assignment and the order affirming it were "simply parts of one action by the Pennsylvania Supreme Court, which…is clearly adjudicative").[4] As the courts of this district have routinely held, the scope of judicial functions is quite broad, and includes many decisions relating to the administration of the courts. *See, e.g., Primm v. Cty. of DuPage*, No. 92 C 3726,

---

[4] The *Guarino* majority also held that the *original* Pennsylvania Supreme Court order terminating the judge's appointment was not "adjudicative" of any matter for purposes of the *Rooker-Feldman* doctrine because it did not explicitly "reach[] conclusions of law" as to the plaintiff judge's constitutional claims. 11 F.3d at 1159. The concurrence disagreed. *Id.* at 1162 (Nygaard, J., concurring). To some extent, this portion of the *Guarino* opinion conflicts with the decisions in this district that the administrative duties of a chief judge are judicial acts. In any event, the "legal conclusion" reached in the Pennsylvania Supreme Court's second order was that "the temporary assignment of a retired judge to judicial service is a matter solely within the discretion of this Court, and any such assignment may be revoked for any reason at this Court's discretion." *Guarino,* 11 F.3d at 1159 (emphasis in original). As discussed above, that same legal conclusion is implicit in each of the Illinois Supreme Court's orders vacating a temporary judicial appointment, including Judge Brown's.

11

1993 WL 338762, at *6 (N.D. Ill. Sept. 2, 1993) ("[A] judge, and particularly a chief judge, has many administrative duties that which are part of his normal function, and no less judicial than the act of presiding over a courtroom."); *Payne v. County of Cook*, No. 15 C 3154, 2016 WL 1086527 (N.D. Ill. March 21, 2016) (the Chief Judge's oversight of the Probation Department was a judicial function).[5] Here, the Illinois Supreme Court's decision to vacate Brown's appointment was judicial and should be entitled to judicial immunity. *See*, *e.g., Martinez*, 771 F.2d at 434.

Moreover, in *Sparks v. Kentucky Character & Fitness Committee*, the Sixth Circuit found that "the act of considering an [attorney's] application for admission to the bar, particularly when that duty is imposed upon the judiciary by constitution, is a judicial act." 818 F.2d 541, 542 (6th Cir.1987), *vacated*, 484 U.S. 1022, *aff'd on reconsideration*, 859 F.2d 428 (6th Cir. 1988). The court reasoned that:

> The court's exercise of its inherent power to choose its officers is substantially determinative of the character and quality of our entire judicial system, state and federal. Our system of justice depends, in substantial measure, upon the service of competent and qualified attorneys. The decision whether to admit or deny an applicant admission to the bar, and thus to determine the composition and quality of the bar, affects both the quality of justice in our courts and the public's perception of that quality. The decision is therefore integral to the very essence of the judicial process.

*Id.* at 543; *see also Davis v. Tarrant Cty.*, 565 F.3d 214, 226 (5th Cir. 2009) (decision to select attorney applicants for court appointment eligibility protected by judicial immunity). If the exercise of a court's inherent power to choose attorneys is a judicial function, how much more so is the exercise of its inherent power under the Illinois Constitution to issue and terminate temporary judicial recall assignments. *See* Ill. Const. art. VI, §§ 15, 16. For these reasons, the Judicial

---

[5] *See also Ortiz v. Foxx*, 596 F. Supp. 3d 1100, 1109 (N.D. Ill. 2022) (processing a name-change petition is a judicial act; the fact that it "requires discretion and judgment…weigh[s] in favor of considering an act to be judicial in nature.") (citing *Kowalski v. Boliker*, 893 F.3d 987, 998 (7th Cir. 2018)).

Defendants are entitled to absolute judicial immunity, and Judge Brown's complaint should be dismissed.

### C. Judge Brown cannot seek injunctive relief against the Justices under Section 1983.

Even aside from judicial immunity, Section 1983 bars any suit for injunctive relief against a judge. In 1996, Congress amended 42 U.S.C. § 1983 to state that "injunctive relief shall not be granted" in an action brought against "a judicial officer for an act or omission taken in such officer's judicial capacity . . . unless a declaratory decree was violated or declaratory relief was unavailable." *Haas*, 109 F. App'x at 114 (quoting 42 U.S.C. § 1983). This amendment was intended to overrule the Supreme Court's decision in *Pulliam v. Allen*, 466 U.S. 522, 541-43 (1984), which held that judicial immunity is not a bar to demands for injunctive relief against state judges. *Haas*, 109 F. App'x at 114. As discussed above, the Justices were clearly acting in their judicial capacity when vacating Judge Brown's temporary assignment. Judge Brown's request for injunctive relief must be dismissed accordingly.

### D. Judge Brown has failed to state a claim.

#### 1. Judge Brown has failed to state a claim for a due process violation because he does not have a property interest in his temporary recall assignment.

The Due Process Clause imposes procedural safeguards on governmental decisions that deprive individuals of liberty or property interests, within the meaning of the Fifth or Fourteenth Amendments. *See Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Where, as here, a plaintiff asserts the deprivation of a property interest without due process (Dkt. 1 ¶ 50), the threshold question is whether a protected property interest actually exists. *Cole v. Milwaukee Area Tech. College Dist.*, 634 F.3d 901, 904 (7th Cir. 2011) (internal citation omitted). In the context of employment, a property interest "is created and defined by the terms of the employee's]

appointment." *Id.* (internal quotations omitted) It exists only "when an employer's discretion is clearly limited so that the employee cannot be denied employment unless specific conditions are met." *Id.* (internal quotation omitted). Accordingly, "a plaintiff generally is required to show that the terms of his employment provide for termination only for cause or otherwise evince mutually explicit understandings of continued employment." *Id.* (internal quotations omitted). Even employees "in the 'gray area' between at-will employment and employment which could only be terminated for cause . . . do not normally have a protectable property interest in continued employment." *Id.* at 905 (internal citations omitted). "The burden is on the plaintiff to point to the criteria that might cabin the employer's discretion." *Id.* (internal quotation omitted).

Here, Judge Brown cannot demonstrate that he had a property interest in his temporary recall assignment to the Cook County bar because he cannot show that he had a "legitimate claim of entitlement to continued employment." *Id.* at 906. The terms of Judge Brown's recall appointment contained no "mutually explicit understandings of continued employment" (*id.* at 904). *See* Dkt. 1, Ex. 5. To the contrary, as discussed above, the plain language of the Illinois Constitution indicates that recalling and assigning retired judges is completely within the power of the Supreme Court. *See* Ill. Const., art. VI, §15. This would necessarily and logically include the discretion to determine the length of the assignment of a recalled judge and the discretion to terminate the assignment of a recalled judge. This interpretation is supported by the fact that the Illinois Supreme Court has historically treated temporary judicial assignments as discretionary, summarily vacating orders recalling various retired judges to active service. *See* Exs. 1-5. Other courts have treated temporary judicial assignments similarly. *See Guarino*, 11 F.3d at 1155 (Pennsylvania Supreme Court explained that "the temporary assignment of a retired judge to judicial service is a matter solely within the discretion of this Court, and any such assignment may

14

be revoked for any reason at this Court's discretion."); *Marro v. Bartlett*, 389 N.E.2d 808, 809 (N.Y. 1979) (Discretion to certify retired Justices was "nearly unfettered"); *Schwartz v. Mayor's Comm. on the Judiciary*, 816 F.2d 54, 57 (2d Cir. 1987) ("[T]he fact that many, or even most, incumbent judges have been reappointed cannot operate to raise the plaintiff's subjective expectation [of reappointment] to a constitutionally protected right."). Judge Brown's due process claim should be dismissed accordingly.

> **2.      *Judge Brown has not stated a claim for a First Amendment violation because the Illinois Supreme Court's interest in maintaining public confidence in the judiciary outweighs Judge Brown's First Amendment interest.***

Judge Brown brings two counts relevant to his First Amendment claim – Count II ("Defendants retaliated against Judge Brown because he exercised his First and Fourteenth Amendment free speech rights before he applied for a recall position.") and Count III ("Alternatively, application of the Illinois Code of Judicial Conduct to limit the speech of a retired judge violates the First Amendment."). Both counts should be dismissed.

Judge Brown has not stated a claim for First Amendment retaliation because the Illinois Supreme Court's interest in maintaining public confidence in the judiciary outweighs Judge Brown's First Amendment interests. It is well-established that "the State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general." *Kiddy-Brown v. Blagojevich*, 408 F.3d 346, 358 (7th Cir. 2005) (quoting *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)) (internal quotation marks omitted). Indeed, "the government's interest in regulating speech is far greater when it is acting as an employer than as a sovereign." *Kilborn v. Amiridis*, 131 F.4th 550, 557 (7th Cir. 2025) (citing *Waters v. Churchill*, 511 U.S. 661, 671-72 (1994)). In

15

this respect, "the government needs to exercise control over its employees to provide public services effectively." *Id.* (citing *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)).

Therefore, in order to state a claim for First Amendment retaliation in the government employment context, a plaintiff must first demonstrate that their speech was constitutionally protected under the *Connick-Pickering* test. *Lalowski v. City of Des Plaines*, 789 F.3d 784, 790 (7th Cir. 2015). Under this test, a court first asks whether a government employee is speaking as a citizen on a matter of public concern. *Id.* at 790. If so, a court will "balance the employee's interests against the government's interests." *Kilborn*, 131 F.4th at 557. Factors to consider in applying *Connick-Pickering* balancing include:

> (1) whether the speech would create problems in maintaining discipline or harmony among co-workers; (2) whether the employment relationship is one in which personal loyalty and confidence are necessary; (3) whether the speech impeded the employee's ability to perform her responsibilities; (4) the time, place, and manner of the speech; (5) the context within which the underlying dispute arose; (6) whether the matter was one on which debate was vital to informed decision-making; and (7) whether the speaker should be regarded as a member of the general public.

*Greer v. Amesqua*, 212 F.3d 358, 371 (7th Cir. 2000) (Defendant fire chief did not violate employee's First Amendment rights when she terminated him for publishing a homophobic press release accusing her of harboring "radical agendas"); *see also Lalowski*, 789 F.3d at 789 (same, when defendant city terminated police officer for making insulting statements towards anti-abortion protestors while off-duty).

Here, the Illinois Supreme Court has the highest possible interest in maintaining public trust in the judiciary. *See Siefert*, 608 F.3d at 979-80 (It is "beyond doubt that states have a compelling interest in developing, and indeed are required by the Fourteenth Amendment to develop, [] independent-minded and faithful jurists.") (citing *Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 876-77 (2009); *In re Murchison*, 349 U.S. 133, 136, (1955); and *Repub. Pty. of*

16

*Minn. v. White*, 536 U.S. 765 (2002)). In the eyes of a reasonable public observer, Judge Brown's comments in the Article and Podcast significantly undermine that "compelling interest," and his First Amendment claim fails accordingly.

Judge Brown repeatedly emphasizes that he was not a sitting judge when he made the comments at issue here. Dkt. 1 ¶¶ 33, 91-101; Dkt. 7 at 2. But while this assertion is true, it does not mean that the Illinois Supreme Court is not entitled to consider the comments. Judge Brown's comments were made less than three months prior to his recall assignment, and the Podcast was after Judge Brown received the recall application call. Dkt. 1 ¶¶ 22, 23, 26, 33, 35, 36. An observer, therefore, would be entirely within reason to believe that Judge Brown, sitting on the Cook County bench, maintained those perspectives he had so recently expressed. As reflected in the bar associations' objections and explained more fully below, those expressions significantly impacted public perception of his impartiality and independence—particularly where he specifically invoked his status as a former judge in making them. *See* Dkt 1, Exs. 6, 7. And, upon resuming the bench, Judge Brown took no action to retract or ameliorate the impact of his comments. Accordingly, the fact that Judge Brown was not currently serving as a judge when he made his comments does not, in and of itself, save his First Amendment claim.

Turning to the *Connick-Pickering* factors, *first,* Judge Brown's comments (1) accusing "Soros-funded prosecutors" and "the Left" of "wag[ing] 'lawfare' against President Trump;" (2) denying the existence of systemic racism; (3) stoking hatred towards transgender people, immigrants, and racial justice activists; and (4) criticizing other members of the judiciary who have found against President Trump as "Leftist" and "conflicted" (*id.*, Ex. 2) have *already* caused significant disruption for Illinois' legal community and judiciary, as evidenced by the objection letters submitted by prominent Cook County area bar associations (*id.*, Exs. 6, 7).

17

And if this were not evidence enough, under this factor, "an employer need not establish actual disruption before disciplining an employee when the threat of future disruption is obvious." *Greer*, 212 F.3d 372. Based on the nature of Judge Brown's comments, the public could reasonably question his impartiality. Indeed, Judge Brown's comments specifically demeaned and insulted a broad swath of the population of Cook County—individuals who would inevitably appear before him in court—and specifically challenged the integrity of other judges and of prosecutors (and Cook County prosecutors in particular). Dkt. 1, Ex. 2. And even in matters involving neither prosecutors nor members of any of the groups Judge Brown insulted, there was an "obvious . . . threat" that a member of the public might reasonably question his impartiality. *Greer*, 212 F.3d at 372.. Accordingly, Judge Brown's comments would undoubtedly create "problems in maintaining . . . harmony" in the courts of Cook County. *Greer*, 212 F.3d at 371.

*Second*, for the same reasons, Judge Brown's comments, and his lack of action to retract or ameliorate them, impeded his ability to perform his judicial duties—namely, to "promote[] public confidence in the independence, integrity, and impartiality of the judiciary." *See* Code, Rule 1.2; *see also Greer*, 212 F.3d at 372 ("The Department reasonably felt that Greer's speech, if left unpunished . . . would disrupt the operation of the Department by degrading the Department's standing with the public."). His comments also threatened his ability to provide due process to members of the groups he insulted. *See Siefert*, 608 F.3d at 979-80.

*Third*, the time, place, and manner of his speech, as well as its context, seriously undermined the judiciary's interest in maintaining public trust. Judge Brown's comments were issued less than three months before his recall appointment began and were made in a deliberately public forum. *See Greer*, 212 F.3d at 372 (finding that the "publicity and sensationalism" of the government employee's news release weighed against his First Amendment claim and finding that

18

"Greer instead circulated his naked accusations to mass media outlets for broad public consumption and intended to indict the integrity of the Department's leadership publicly.").

*Fourth*, Judge Brown explicitly identified himself as a retired Cook County judge when he made the comments at issue. He identified himself as "The Honorable Judge James R. Brown" and began the Article with a series of "declar[ations]" from "[t]his Honorable Court." Dkt. 1, Ex. 2 at 1. Under these circumstances, he cannot be regarded as a "member of the general public." *Greer*, 212 F.3d at 371. Rather, Judge Brown intentionally used his status as a retired judge for rhetorical effect and to lend weight to his opinions.

An additional consideration supports dismissal here. As discussed above, the Code requires a judge to disqualify himself whenever their impartiality over a matter is reasonably in question. Code, Rule 2.11. This is because the Fourteenth Amendment not only requires "a neutral and detached adjudicator" but requires that "[j]ustice . . . must satisfy the appearance of justice." *Concrete Pipe & Prods. v. Constr. Laborers Pension Trust*, 508 U.S. 602, 617-18 (1993) (internal quotations omitted). "This stringent rule may sometimes bar trial even by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties." *Id.* at 618 (cleaned up). As discussed above, Judge Brown's impartiality over a given matter could reasonably be questioned any time a prosecutor or member of any of the affected groups appeared before him. In traffic court, the likelihood for either of these scenarios is great. Accordingly, in light of his September 2025 comments, Judge Brown would be disqualified from an unmanageable number of cases, and the law does not require the Illinois judicial system to accommodate this strain. *See, e.g., Greer* ("[T]he Department's interests in. . . . maintaining order were quite substantial."). Accordingly, the *Connick-Pickering* balancing test weighs against Judge Brown's First Amendment retaliation claim and Count II should be dismissed.

19

Finally, Judge Brown's Count III should be dismissed because it is unsupported by his allegations. The Justices did not seek to "limit the speech of a retired judge." Dkt. 1 at 14. Judge Brown does not allege that the Justices took any action whatsoever during his retirement. *See, generally,* Dkt. 1. Rather, the Justices ended his recall assignment upon learning of the significant disruption and concern Judge Brown's statements had caused after his *reassignment* to the bench; Judge Brown was a sitting judge when he was terminated, not a retired judge. Moreover, Judge Brown would not have standing to bring claims on behalf of the "sizeable number" of retired Illinois judges he invokes (Dkt. 1 at 94). *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). For all of these reasons, Judge Brown's First Amendment claims should be dismissed.

### 3.     *The Justices are at least entitled to qualified immunity.*

The Justices are also entitled to qualified immunity with regard to Judge Brown's damages claims because their decision to terminate Judge Brown's recall appointment did not violate any of Judge Brown's clearly established constitutional rights. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "Qualified immunity balances . . . the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id*. A Section 1983 defendant is entitled to qualified immunity if (1) the alleged facts do not describe a violation of a constitutional right or (2) the federal right at issue was not "clearly established at the time of the alleged violation." *Smith v. Finkley*, 10 F.4th 725, 737 (7th Cir. 2021).

"The clearly established right must be defined with specificity" (*id*.), a requirement the Supreme Court has made clear "[o]ver and over." *Weiland v. Loomis*, 938 F.3d 917, 919 (7th Cir. 2019) (concluding that the official was entitled to qualified immunity because no precedent established that

20

his specific conduct was forbidden by law, and noting that the state-created danger doctrine is not "a rule of primary conduct forbidding *any* acts by public officials that increase private dangers"); *Finkley*, 10 F.4th at 742 ("A constitutional right is clearly established if 'the right in question is sufficiently clear that a reasonable official would understand that what he is doing violates that right.'").

As discussed above, Judge Brown has not sufficiently alleged that the Justices committed any constitutional violation, let alone that they violated a clearly established federal right. Judge Brown has the burden of demonstrating the existence of a clearly established right at the time of the alleged violation, and he has not done so, nor can he. Instead, the cases discussed above establish the opposite. *See also Ponterio v. Kaye*, 06 Civ. 6289, 2007 WL 2493696, at *27 (S.D.N.Y. Sep. 5, 2007) (Defendants Chief and Appellate Justices of the State of New York were entitled to qualified immunity on plaintiff retired New York Supreme Court Justice's equal protection claim because "[n]o decisional law had, at the time, held that a Justice such as Ponterio might win a[] 'class of one' Equal Protection claim stemming from the [] decision not to reconsider [the] denial of a Justice's certification. "). Accordingly, the Justices are entitled to qualified immunity.

## II.    Judge Brown's Motion for Preliminary Injunction Should Be Denied.

Injunctive relief is "an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original); *see also Boucher v. Sch. Bd.*, 134 F.3d 821, 823 (7th Cir. 1998). A preliminary injunction is "never awarded as of right" and "never to be indulged in except in a case clearly demanding it." *Orr v. Shicker*, 953 F.3d 490, 501 (7th Cir. 2020). A plaintiff "seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Ill. Repub. Pty. v. Pritzker*, 973 F.3d 760, 762 (7th Cir. 2020) (quoting *Winter v. Nat. Res. Def. Counc.*, 555 U.S. 7, 20 (2008)).

21

If the plaintiff satisfies all these requirements, then the court must weigh the harm that the plaintiff will incur without an injunction against the harm to the defendant if one is entered, and "consider whether an injunction is in the public interest." *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 364 (7th Cir. 2019) (internal quotations omitted). This analysis is done on a "sliding scale"— if the plaintiffs are less likely to win on the merits, the balance of harms must weigh more heavily in their favor, and vice versa. The court should pay "particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24.

Moreover, the interim injunction Judge Brown requests in his present motion would give him substantially all the injunctive relief he seeks through this lawsuit, as it would require the Supreme Court of Illinois to reinstate his vacated recall assignment. In such cases, the plaintiff's burden is even higher. *See, e.g.*, *Boucher*, 134 F.3d at 827 n.6 ("A preliminary injunction that would give the movant substantially all the relief he seeks is disfavored, and courts have imposed a higher burden on a movant in such cases."); *W.A. Mack, Inc. v. Gen. Motors Corp.*, 260 F.2d 886, 890 (7th Cir. 1958) ("A preliminary injunction does not issue which gives to a plaintiff the actual advantage which would be obtained in a final decree.").

Here, Judge Brown cannot meet the high bar set for issuing a preliminary injunction. He cannot succeed on the merits, as discussed above. Moreover, Judge Brown has an adequate remedy at law and thus cannot show irreparable harm. Finally, the public consequences of issuing the extraordinary remedy of injunction outweigh the harm to Judge Brown of allowing his vacated recall assignment to stand.

### A. Judge Brown does not have a likelihood of success on the merits.

As set forth above, Judge Brown's complaint should be dismissed. For these same reasons, he is unlikely to succeed on the merits, and a preliminary injunction should be denied on this basis alone. In particular, Section 1983's bar on injunctive relief against judges categorically prohibits

22

preliminary injunctive relief here. As discussed above, Section 1983 prohibits injunctive relief against judges acting in their judicial capacity. Given Section 1983's clear prohibition on injunctive relief against judges, Judge Brown "cannot obtain preliminary relief, which is merely a way station to final relief." *Smith v. City of Hammond*, 388 F.3d 304, 307 (7th Cir. 2004). Judge Brown's motion for a preliminary injunction should be denied for this reason alone.

### B. Judge Brown cannot show irreparable harm.

Judge Brown has also failed to establish that he will suffer irreparable harm if the Court denies his motion. Judge Brown merely claims that "irreparable harm is presumed in First Amendment cases" and that the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Dkt. 7 at 11. But as discussed above, Judge Brown has failed to show that his constitutional rights have been violated, and it is well established that the *possibility* of irreparable harm is not sufficient to warrant a preliminary injunction. *Orr*, 953 F.3d at 502.

### C. The balance of harms weighs against entering a preliminary injunction.

Under the "balance of harms" portion of the analysis, Judge Brown must establish that "the harm [he] would suffer without the injunction is greater than the harm that preliminary relief would inflict on the defendants." *Mich. v. U.S. Army Corps of Eng'g*, 667 F.3d 765, 769 (7th Cir. 2011). Because Judge Brown has not established that he will suffer irreparable harm, the balance of harms necessarily weighs against entry of a preliminary injunction.

The court also should consider whether an injunction would cause harm to the public interest. *Illinois Repub. Party*, 973 F.3d at 763. The "public interest . . . commands respect for federalism and comity, which means that courts must approach the entire enterprise of federal judicial intrusion into the core activities of the state cautiously and with humility." *Money v. Pritzker*, 453 F. Supp. 3d 1103, 1133 (N.D. Ill. 2020). "Without the clarity of a full trial on the

23

merits," the Court should "err on the side of respecting state sovereignty." *Del. State Sportsmen's Ass'n. Inc. v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 206 (3d Cir. 2024). Even after a trial, a federal court should issue injunctions against the State only "sparingly." *Rizzo v. Goode*, 423 U.S. 362, 378 (1976).

The injunction sought here, which would deprive the Illinois Supreme Court of its authority under the Illinois Constitution to manage the assignment of retired judges, would "directly affect[] the administration of the state courts" and offend "principles of equity, comity, and federalism," thus causing substantial harm to the public interest. *Courthouse News,* 908 F.3d at 1070, 1065; *see also, e.g., Siefert*, 608 F.3d at 979-80. For all these reasons, a preliminary injunction is not in the public interest and should be denied accordingly.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the Justices respectfully request this Honorable Court dismiss Judge Brown's complaint and deny his motion for preliminary injunction.

Respectfully submitted,

KWAME RAOUL
Attorney General of Illinois                    By:     */s/     Lee Stark*

Lee Stark
Assistant Attorney General
Government Representation Division
General Law Bureau
115 S. LaSalle Street
Chicago, Illinois 60603
(224) 278-8343
Lee.stark@ilag.gov
*Counsel for Justices*

24