IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| JAMES R. BROWN,<br><br>  Plaintiff,<br><br>v.<br><br>P. SCOTT NEVILLE, JR., *et al.,*<br><br>  Defendants. | Case No. 1:26-cv-1825<br><br>Hon. Edmond E. Chang |

**Plaintiff's Combined Memorandum of Law Opposing
Defendants' Motion to Dismiss Plaintiff's Complaint and Reply
Supporting Plaintiff's Motion for Preliminary Injunction**

i

**TABLE OF CONTENTS**

Table of Authorities ...................................................................................................iii

Introduction ................................................................................................................ 1

Argument .................................................................................................................... 3

    I.    The history of Illinois' judicial disciplinary system confirms that Defendants lack authority to remove Judge Brown from the bench................................. 3

    II.   Defendants are not entitled to judicial immunity........................................... 6

        A.  Defendants acted in clear absence of all jurisdiction to remove Judge Brown ........................................................................................................ 6

        B.  Removal of Judge Brown from the bench is a non-judicial act.................... 9

    III.  Defendants did not act in their judicial capacity so injunctive relief is available................................................................................................................ 10

    IV.  Defendants violated Judge Brown's clearly established First Amendment Rights............................................................................................................. 10

        A.  Defendants' *ultra vires* judicial discipline is unconstitutional viewpoint discrimination ........................................................................................... 10

        B.  Removing Judge Brown for his speech made as a private citizen on a matter of public concern violated the First Amendment .......................... 12

        C.  Application of the *Pickering* balancing test at this stage of the litigation is premature ................................................................................................... 15

    V.   Defendants violated Judge Brown's Fourteenth Amendment rights by circumventing Illinois' established system of judicial discipline ................. 16

        A.  Judge Brown holds a cognizable property interest in his judicial recall appointment................................................................................................ 16

    VI.  Defendants are not entitled to qualified immunity ...................................... 17

        A.  Retaliating for pre-employment speech is a clearly established First Amendment violation ................................................................................. 18

        B.  Judge Brown's right to have disciplinary matters adjudicated by the Illinois Courts Commission is clearly established by Defendants' own court. ......................................................................................................... 19

    VII.  Principles of federalism and comity are not implicated by the narrow relief sought by Judge Brown ............................................................................... 19

        A.  Traditional abstention doctrines do not apply ......................................... 20

        B.  *Younger*'s underlying principles of federalism and comity are not implicated here ........................................................................................ 20

Conclusion............................................................................................................... 23

ii

## TABLE OF AUTHORITIES

**Cases**

*Bardney v. United States,*
1998 U.S. App. LEXIS 13036, at \*14 (7th Cir. June 16, 1998) ............................ 11

*Bradley v. Vill. Of Univ. Park,*
59 F.4th 887 (7th Cir. 2023) .................................................................................. 16

*Casna v. City of Loves Park,*
574 F.3d 420 (7th Cir. 2009) ................................................................................. 16

*Coady v. Steil,*
187 F.3d 727 (7th Cir. 1999) ...................................................................... 13, 14, 18

*Connick v. Myers,*
461 U.S. 138 (1983) ................................................................................................ 12

*Courthouse News Serv. v. Brown,*
908 F.3d 714 (7th Cir. 2018) ................................................................. 2, 21, 22, 23

*Courthouse News Serv. v. Gilmer,*
48 F.4th 908 (8th Cir. 2022) .................................................................................. 22

*Courthouse News Serv. v. Planet,*
750 F.3d 776 (9th Cir. 2014) ................................................................................. 22

*Courthouse News Serv. v. Schaefer,*
2 F.4th 318 (4th Cir. 2021) ................................................................................... 22

*Dep't of Pub. Works & Bldgs. v. Legg,*
374 Ill. 306 (1940) ................................................................................................... 8

*District of Columbia v. Wesby,*
583 U.S. 48 (2018) .................................................................................................. 17

*E. St. Louis Fed'n of Teachers, Local 1220 v. E. St. Louis Sch. Dist. No. 189 Fin.
Oversight Panel,* 178 Ill. 2d 399 (1997) ................................................................ 17

*Garcetti v. Caballos,*
547 U.S. 410 (2006) ................................................................................................ 12

*Gazarkiewicz v. Town of Kingsford Heights,*
359 F.3d 933 (7th Cir. 2004) ................................................................................. 14

*Gustafson v. Jones,*
117 F.3d 1015 (7th Cir. 1997) ............................................................................... 15

*Gustafson v. Jones,*
290 F.3d 895 (7th Cir. 2002) ................................................................................. 12

iii

*Harnishfeger v. United States,*
  943 F.3d 1105 (7th Cir. 2019) ......................................................... 18

*J.B. v. Woodard,*
  997 F.3d 714 (7th Cir. 2021) ......................................................... 2, 22

*Jungels v. Pierce,*
  825 F.2d 1127 (7th Cir. 1987) ......................................................... 14, 15

*Forrester v. White,*
  484 U.S. 219 (1988) ......................................................... 9

*Hennessy v. Penril Datacomm Networks, Inc.,*
  69 F.3d 1344 (7th Cir. 1995) ......................................................... 11

*Kowalski v. Boliker,*
  893 F.3d 987 (7th Cir. 2018) ......................................................... 6, 9

*Markham v. White,*
  172 F.3d 486 (7th Cir. 1999) ......................................................... 18

*Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n,*
  457 U.S. 423 (1982) ......................................................... 20

*Mitchum v. Foster,*
  407 U.S. 225 (1972) ......................................................... 2, 23

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans,*
  491 U.S. 350 (1989) ......................................................... 19–20

*People ex rel. Harrod v. Ill. Cts. Comm'n,*
  69 Ill. 2d 445 (1977) ......................................................... 1, 2, 5, 6, 9, 10, 19

*People v. Isaacs,*
  37 Ill. 2d 205 (1967) ......................................................... 3

*Perry v. Sindermann,*
  408 U.S. 593 (1972) ......................................................... 16

*Pickering v. Bd. of Educ.,*
  391 U.S. 563 (1968) ......................................................... 13

*Rainsberger v. Benner,*
  913 F.3d 640 (7th Cir. 2019) ......................................................... 17

*Reed v. Town of Gilbert,*
  576 U.S. 155 (2015) ......................................................... 10, 12

*SKS & Assocs. v. Dart,*
  619 F.3d 674 (7th Cir. 2010) ......................................................... 2, 20, 21, 22

*Stump v. Sparkman,*
  435 U.S. 349 (1978) ......................................................... 1, 9, 10

iv

*Sutterfield v. City of Milwaukee,*
751 F.3d 542 (7th Cir. 2014) .......................................................................... 18

*Younger v. Harris,*
401 U.S. 37 (1971) ........................................................................................ 20

**Constitutions**

Ill. Const., art. IV § 14 ................................................................................. 1, 6

Ill. Const., art. IV § 15 ......................................................................... 1, 4, 6, 7, 9

Ill. Const. 1870, art. VI § 18 (1964) ................................................................ 3

**Statutes, Rules, and Codes**

42 U.S.C. § 1983 .......................................................................................... 10

Fed. R. Evid. 201 ......................................................................................... 11

Ill. Code of Jud. Conduct, Preamble & Scope ............................................... 7, 10, 17

**Other Authority**

6 Record of Proceedings, Sixth Illinois Constitutional Convention
(Springfield, 1970–1972) .............................................................................. 1

*About Cook County*, Cook Cnty. Gove't, https://www.cookcountyil.gov/about-cook-county (last visited April 17, 2024) .................................................................. 15

*Court Won't Return Some to the Bench*, Chicago Tribune (July 15, 1993),
https://www.chicagotribune.com/1993/07/15/court-wont-return-some-to-the-bench
.................................................................................................................. 8

Frank Greenberg, *The Illinois Two-Tier Judicial Disciplinary System: Five Years
and Counting*, 54 Chi.-Kent L. Rev. 69 (1977) .............................................. 4, 5

*Ill. Sec. of State*, Ill. Blue Book, Appellate Court Judges ............................... 11

*Justices Return 2nd Ousted Judge to Bench*, Chicago Tribune (July 3, 1991) ........... 8

William T. Braithwaite, *Judicial Misconduct and How Four States Deal With It*,
35 Law and Contemporary Problems 151-170 (Winter 1970) ............................... 3

**INTRODUCTION**

They did it again. In 1969, the Illinois Supreme Court circumvented the Illinois Courts Commission to impose judicial discipline on its own. The result was an amendment to the Illinois Constitution removing judicial disciplinary power from the Illinois Supreme Court. In 2026, Defendants once again circumvented the Illinois Courts Commission to carry out judicial discipline against Judge James Brown.

Defendant Illinois Supreme Court justices lack the authority to adjudicate judicial discipline and remove Judge Brown or any other Illinois state court judge from the bench. The Illinois Constitution says so. Ill. Const., art. IV, §§ 14, 15(e). The delegates who drafted those provisions of the Illinois Constitution specifically debated judicial removal authority and made it so. 6 Record of Proceedings, Sixth Illinois Constitutional Convention 864 (Springfield, 1970–1972) (discussing a "wealth" of diverse proposals regarding judicial discipline and "restructuring of discipline and removal procedures"). And the Illinois Supreme Court has acknowledged that it has no authority to adjudicate discipline against sitting judges. *People ex rel. Harrod v. Ill. Courts Com.*, 69 Ill. 2d 445, 466 (1977).

Defendants clearly exceeded their authority by unilaterally vacating Judge Brown's judicial appointment. Defendants are not entitled to judicial immunity. *Stump v. Sparkman*, 435 U.S. 349, 357 (1978). Defendants acted outside their authority and their judicial capacity. Injunctive relief is available to Judge Brown under 42 U.S.C. § 1983. *Id.* at 355–56. Defendants' lack of authority to remove

1

Judge Brown was clearly established, even by their own institution. *People ex rel. Harrod,* 69 Ill. 2d at 466. Defendants are not entitled to qualified immunity.

The narrow scope of this litigation does not implicate broad matters of federalism and comity necessitating abstention. Judge Brown is not part of an ongoing state proceeding. *J.B. v. Woodard*, 997 F.3d 714, 721 (7th Cir. 2021). The relief sought by Judge Brown does not require continuous oversight of a state court clerk's office. *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1071 (7th Cir. 2018). Judge Brown does not seek intervention into the management and timing of an entire category of state proceedings. *SKS & Assocs. v. Dart*, 619 F.3d 674, 679 (7th Cir. 2010). He merely seeks to return to the bench to finish the remaining few months of his judicial recall term and be made whole for his economic losses.

Defendants violated Judge Brown's First and Fourteenth Amendment rights by circumventing established removal procedures and kicking him off the bench for speech made as a private citizen. For those Constitutional violations, Judge Brown now seeks remedy through 42 U.S.C. § 1983, a law enacted because Congress "realized that state officers might, in fact, be antipathetic to the vindication of those rights; and it believed that these failings extended to the state courts." *Mitchum v. Foster*, 407 U.S. 225, 242 (1972). This Court should deny Defendants' motion to dismiss and grant Plaintiff's motion for preliminary injunction.[1]

---

[1] Pursuant to this Court's March 26, 2026 order (ECF No. 13), Plaintiff anticipates that Judge James Brown will testify on the May 6, 2026, hearing on Plaintiff's Motion for Preliminary Injunction.

## ARGUMENT

**I. The history of Illinois' judicial disciplinary system confirms that Defendants lack authority to remove Judge Brown from the bench.**

In 1969, two Illinois Supreme Court justices—Chief Justice Roy Solifsburg Jr. and Justice Ray Klingbiel—took a bribe from a criminal defendant on appeal before the Illinois Supreme Court. William T. Braithwaite, *Judicial Misconduct and How Four States Deal With It*, 35 Law and Contemporary Problems 151-170, 151 (Winter 1970).[2] Both justices had business dealings with the defendant, including Chief Justice Solifsburg's receipt of 100 shares of stock. *Id.* at 151–52. Justices Solifsburg and Klingbiel voted with the majority in a 4–2 decision dismissing the criminal indictment against the defendant. *Id.* at 152; *People v. Isaacs*, 37 Ill. 2d 205 (1967). Judge Klingbiel drafted the opinion. *Isaccs,* 37 Ill. 2d at 207. After the bribery allegations surfaced, the Illinois Supreme Court bypassed the Illinois Courts Commission and set up its own *ad hoc* special commission to investigate the allegations.[3] Braithwaite at 151–52. The Illinois Supreme Court found the justices guilty of both the appearance of impropriety and "positive acts of impropriety" and requested both justices resign. *Id.* at 152 (quoting *Rep. of the Spec. Comm'n of the Supreme Court of Illinois in the Matter of the Spec. Comm'n in re. to No. 39797* (July 31, 1969)). Both justices resigned from the Illinois Supreme Court but "the confidence of the public and the Bar in the Court" had been "severely shaken." *Id.*

---

[2] Available at https://scholarship.law.duke.edu/lcp/vol35/iss1/10.

[3] The Illinois Courts Commission had been created as part of the 1964 Judicial Article amending the Illinois Constitution. Ill. Const. 1870, art. VI, § 18 (1964).  The Illinois Courts Commission in its 1964 form also held the power to remove Illinois judges for misconduct. Braithwaite at 151.

This incident took place a few short months before Illinois' Sixth Constitutional Convention. Frank Greenberg, *The Illinois Two-Tier Judicial Disciplinary System: Five Years and Counting*, 54 Chi.-Kent L. Rev. 69, 71 (1977). The scandal stoked "intense controversy which quickly engaged the constitutional convention over who should judge the judges." *Id.* at 72 (internal quotations omitted). On the "problem of discipline and removal of judges," the Convention's Committee on the Judiciary ("Committee") acknowledged that "at no time in the history of this State had this issue been a matter of such great public discussion and concern." *Id.* at 72–73 (quoting 6 Record of Proceedings, Sixth Illinois Constitutional Convention 860). The Committee received 12 proposals to fix the judicial discipline system. *Id.* at 73 n. 18., (6 Record of Proceedings, Sixth Illinois Constitutional Convention 849–932). The two most seriously debated proposals were from the judiciary and the Chicago and Illinois bar associations. *Id.* at 71–72. The judiciary sought to maintain "its exclusive control of the disciplinary process." *Id.* at 72. The bar associations proposed a single disciplinary commission staffed only by lawyers and non-lawyers, not judges. *Id.* What came out of the debate is the constitutional amendment creating today's Illinois judicial disciplinary system—a two-tiered system of independent agencies.[4] The Judicial Inquiry Board investigates and prosecutes complaints of judicial misconduct. Illinois Const., Art. VI, § 15(b)–(d). The Illinois

---

[4] The 1970 amendment also granted authority to the Illinois Supreme Court to appoint retired judges to judicial service. Ill. Const., art. VI, § 15(a). However, the amendment did not create an alternate system of judicial discipline for retired judges reappointed to judicial service. *Id.*

Courts Commission adjudicates those complaints brought by the Judicial Inquiry Board. Illinois Const., Art. VI, § 15(e). The Courts Commission is vested with the power to remove, suspend, censure, or reprimand judges for misconduct, "including conduct that is prejudicial to the administration of justice." *Id.* Decisions of the Courts Commission are final. Illinois Const., Art. VI, § 15(f). Considering the extensive debate and context of the 1970 Illinois Constitutional Convention, severance of authority over judicial discipline from the judicial branch "was not in any sense accidental." Greenberg at 73.

The Illinois Supreme Court acknowledges that the 1970 constitutional amendments stripped it of its authority to remove judges for violations Illinois Code of Judicial Conduct. The Illinois Supreme Court recognized that:

> The convention delegates unanimously adopted the Committee's recommendation. This court was thereby vested with the exclusive authority to promulgate rules of judicial conduct for the judges of this State. With respect to the judicial disciplinary system's investigative, prosecutorial, and adjudicative functions, *the Committee and convention delegates expressly indicated that this court was to have no involvement.*

*People ex rel. Harrod*, 69 Ill. 2d. at 466 (emphasis added). The history and context of Illinois Constitution make clear that the judicial discipline process—including the removal of judges from the bench—is exclusively vested with the Judicial Inquiry Board and the Illinois Courts Commission. Illinois Const., Art. VI, § 15(b)–(f). Defendants were to "have no involvement" in enforcing the Illinois Code of Judicial Conduct against Judge Brown.

5

## II. Defendants are not entitled to judicial immunity.

The Illinois Constitution and the Illinois Supreme Court itself clearly show that removing Judge Brown was a non-judicial act taken without authority. "Although judicial immunity is broad, it is not limitless." *Kowalski v. Boliker*, 893 F.3d 987, 997 (7th Cir. 2018). "A judge does not enjoy immunity if he or she is acting in the 'clear absence of all jurisdiction.'" *Id.* (quoting *Stump* 435 U.S. at 357). "A judge is also amenable to suit for non-judicial acts." *Id.* (citing *Stump* 435 U.S. at 360–62). Defendants claim to have acted to ensure the integrity of the court, leaning heavily on Illinois Code of Judicial Conduct 1.2. (Defs.' Mem. 17; Compl. ¶ 42 n.2). However, granting judicial immunity simply because actions were taken "to ensure the security and integrity of the court" is a "step too far." *Kowalski*, 893 F.3d. at 997.

### A. Defendants acted in clear absence of all jurisdiction to remove Judge Brown.

The Illinois Constitution prescribes only two methods to remove Circuit Court judges: impeachment or the two-tiered judicial disciplinary system of the Judicial Inquiry Board and Illinois Courts Commission. Ill. Const., art. IV, §§ 14, 15(b)–(e). The power to sanction—including removal from office, suspension, censure and reprimand—for violations of the Illinois Code of Judicial Conduct is solely vested with the Illinois Courts Commission. Ill. Const., art. IV, § 15(e). The drafters of Ill. Const., art. IV, § 15(e) were clear: the Illinois Supreme Court "was to have no involvement" in adjudicating violations of the Illinois Code of Judicial Conduct. *People ex rel. Harrod*, 69 Ill. 2d. at 466. The Illinois Code of Judicial Conduct provides "a basis for regulating [judges'] conduct through the Illinois Judicial

6

Inquiry Board and the Illinois Courts Commission." Ill. Code of Jud. Conduct, Preamble & Scope at ¶ 3.

Nonetheless, Defendants investigated the Cook County Bar Association's and Chicago Council of Lawyers' claims that Judge Brown ran "afoul of the Illinois Code of Judicial Conduct." (Compl. Ex. 6 at 3 and Ex. 7 at 3 (both using the same phraseology)). Defendants prosecuted the complaint because Judge Brown allegedly "violate[d] the Illinois Code of Judicial Conduct" (Compl. ¶ 42 n.2). Defendants adjudicated the alleged violation by removing Judge Brown from the bench. (Compl. Ex. 8). In clear absence of any jurisdiction, Defendants appropriated the entire judicial discipline process to remove Judge Brown from the bench for alleged violations of the Illinois Code of Judicial Conduct.

Judge Brown was recalled pursuant to the Illinois Supreme Court's authority to recall and assign retired judges to judicial service. Ill. Const. art. VI, § 15(a). Defendants cast Judge Brown and all retired judges serving recall appointments as a subordinate judicial class vis-à-vis Illinois judges sitting the bench through election or retention. Defendants argue that adjudicating judicial discipline for retired judges is merely an "administrative" duty. (Defs.' Mem. at 3, 11–12). They make this claim without the support of the Illinois Constitution. *Id.* at 4 ("neither the Illinois Constitution nor the Illinois Supreme Court Rules prescribe the way such "recall assignments" . . . are to be terminated.").

To fill the silence of the Illinois Constitution, Defendants cite five previous instances when recall appointments were rescinded. (Defs.' Mem. Ex. 1). None of

7

these rescinded appointments demonstrate authority to impose judicial discipline on recalled judges. Orders recalling three retired judges—Francis Mahon, Jerome Garoon, and John Nelligan—were vacated before the retired judges took the bench. (Defs.' Mem. Ex. 1 at 4–9). Judge Charles Connor was recalled for an open-ended term "until further order of the Court." (Defs.' Mem. Ex. 1 at 12). His term was simply ended consistent with the Illinois Supreme Court's initial order. (Defs.' Mem. Ex. 1 at 10). The appointment of Judge Joseph Lavorci was vacated because he had failed to win election or retention and was therefore ineligible for recall.[5] These are truly administrative actions. None give a scintilla of support that Defendants are authorized to adjudicate judicial discipline over recalled judges.

Upon returning to the bench, Judge Brown was an Illinois Circuit Court judge, full stop. His decisions carried the same wait as every other judge on the Cook County Circuit Court. *Dep't of Pub. Works & Bldgs. v. Legg*, 374 Ill. 306, 309 (Ill. 1940) ("Judges of a court exercise the power vested in the courts as such and not in them as officers."). Judge Brown and all retired judges recalled to judicial service are entitled to the same judicial disciplinary system as every other Illinois judge. Defendants adjudicated judicial discipline against Judge Brown in clear absence of all jurisdiction. They are not entitled to judicial immunity.

## B. Removal of Judge Brown from the bench is a non-judicial act.

---

[5] Judge Joseph Lavorci was an associate judge from 1979–1983 and was removed by a full vote of Cook County Circuit Court judges. *Justices Return 2nd Ousted Judge to Bench*, Chicago Tribune (July 3, 1991). This made him ineligible for recall, a fact which the Illinois Supreme Court subsequently clarified. *Court Won't Return Some to the Bench*, Chicago Tribune (July 15, 1993), https://www.chicagotribune.com/1993/07/15/court-wont-return-some-to-the-bench/.

"A judge is also amenable to suit for nonjudicial acts." *Kowalski,* 893 F.3d at 997. Judicial acts do not include "administrative, legislative, or executive functions that judges may on occasion be assigned by law to perform." *Forrester v. White*, 484 U.S. 219, 227 (1988). The act in question, not the identity of the actor, determines whether the act is judicial. *Id.* at 229. The Seventh Circuit has "cautioned against liberally categorizing acts as judicial." *Kowalski* 893 F.3d at 998. Analysis of whether an act is judicial includes "whether it is a function normally performed by a judge" and the "expectation of the parties." *Stump,* 435 U.S. at 362. Promulgating and enforcing rules of professional conduct are non-judicial actions. *Kowalski*, 893 F.3d at 998 (citing *Forrester*, 484 U.S. at 228–9).

Illinois enforces the Code of Judicial Conduct through the Judicial Inquiry Board and Illinois Courts Commission. Ill. Const., art. IV, § 15(b)–(e). Judges "have no involvement" in the "judicial disciplinary system's investigative, prosecutorial, and adjudicative functions." *People ex rel. Harrod* 372 N.E.2d at 62-63. The delegates that created the two-tiered judicial discipline system considered judicial involvement and expressly rejected it. *Id.* As a judge of 18 years, Judge Brown had every expectation that any discipline would come through the system prescribed by the Illinois Constitution, not the *ultra vires* action of the Defendants. Defendants' removal of Judge Brown was a non-judicial act: judges don't adjudicate judicial discipline in Illinois, and Judge Brown expected as much. Defendants are not entitled to judicial immunity.

9

### III. Defendants did not act in their judicial capacity so injunctive relief is available.

Under the 1996 amendments to 42 U.S.C. § 1983, injunctive relief is unavailable only "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity." Whether judges typically perform the act and the expectations of the parties informs whether an act is taken in the judicial capacity." *Stump*, 435 U.S. at 362. In Illinois, judges do not adjudicate alleged violations of the Illinois Code of Judicial Conduct. *People ex. rel. Harrod*, 69 Ill. 2d. at 466. Defendants did not act in their judicial capacity when they unilaterally removed Judge Brown from the bench. Injunctive relief is available. 42 U.S.C. § 1983.

### IV. Defendants violated Judge Brown's clearly established First Amendment Rights

#### A. Defendants' *ultra vires* judicial discipline is unconstitutional viewpoint discrimination.

Judge Brown spoke in his capacity as a private citizen. When Judge Brown penned his opinion column and made his podcast appearance, he had no official duties. He was retired. He was a private citizen. The Illinois Code of Judicial Conduct simply did not apply when Judge Brown was retired. The Code of Judicial Conduct "establishes standards for the ethical conduct of judges and judicial candidates." Preamble & Scope ¶ 3. It does not apply to retired judges. Defendant's removal action was a viewpoint-based restriction on speech, which is per se unconstitutional. Defendants must provide a compelling governmental interest and show that the action is narrowly tailored to serve that interest. *Reed v. Town of*

10

*Gilbert*, 576 U.S 155, 171 (2015) (applying strict scrutiny to content-based speech restrictions). They have not done so here.

Underinclusive government restrictions on speech fail strict scrutiny. *Id.* Defendants claim Judge Brown undermined public confidence in the judiciary. (Def. Mem. at 15—17). Yet Defendants allow other sitting judges to publicly speak on matters of public concern. Judge Ramon Ocasio III has been an Illinois judge since 2006—first at the Cook County Circuit Court, now at the Illinois Court of Appeals. *Ill. Sec. of State*, Ill. Blue Book, Appellate Court Judges at 4. Judge Ocasio writes a regular column for the Chicago Daily Law Bulletin.[6] (Ex. 1). These columns clearly identify Judge Occasio as a judge use his official judiciary email. *See eg.* Ex. 2. His columns discuss myriad matters of public concern, including: the "abolition of policing" through the lens of the Native American "indigenous resistance" who view police officers as "foot soldiers of US occupation, racism, and misogyny" (Ex. 3); the "pervasive influence of white supremacy" evidenced in our "legal frameworks, societal norms, and economic systems" (Ex. 4 at 2); the teaching of critical race theory in public schools (Ex. 5); and referencing Defendant Chief Justice Neville Jr. to advocate for a more diverse judiciary (Ex. 6). Defendants adjudicated *ultra vires* discipline on Judge Brown for one article written as a private citizen. Yet they continue to let a sitting judge publish. (Ex. 1). Defendants practiced viewpoint

---

[6] The publication of these articles is indisputable, so this court may take judicial notice. Fed. R. Evid. 201(b); *Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344, 1354 (7th Cir. 1995). *See also, Bardney v. United States*, 1998 U.S. App. LEXIS 13036, at *14 (7th Cir. June 16, 1998) (unpub.) (taking judicial notice of Chicago Daily Law Bulletin articles specifically).

11

discrimination that is "hopelessly underinclusive" and cannot meet the standards of strict scrutiny. *Reed*, 576 U.S. at 171.

### B. Removing Judge Brown for his speech made as a private citizen on a matter of public concern violated the First Amendment

Even under the more lenient standard applying to government employees' speech—which does not apply here because Judge Brown made the speech at issue as a private citizen—Defendants' removal action would violate the First Amendment. The First Amendment protects speech made by government employees in their capacity as private citizens. *Garcetti v. Caballos*, 547 U.S. 410, 419 (2006). To determine whether government employee speech made as a private citizen is protected, the court determines whether the speech addresses a matter of public concern. *Connick v. Myers*, 461 U.S. 138, 145–46 (1983). The content, form, and context of the speech as revealed by the whole record is considered. *Gustafson v. Jones*, 290 F.3d 895, 906–07 (7th Cir. 2002) (internal citations omitted). "The 'public concern' element is satisfied if the speech can fairly be said to relate to a matter of political, social, or other concern to the community, rather than merely a personal grievance of interest only to the employee." *Id.* at 907 (internal citation omitted). Judge Brown's speech addressed myriad political and social issues, including criminal prosecution of the President, the COVID pandemic, the American withdrawal from Afghanistan, and the opiate crisis. (Compl. Ex. 2 at 2–4) Judge Brown spoke as a private citizen on matters of public concern. So, his speech must be balanced against the government's interest.

12

To restrict an employee's speech made as a private citizen on a matter of public concern, Defendants bear the burden to show their interest in government efficiency outweighs the employee's speech interests. *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968); *Coady v. Steil*, 187 F.3d 727, 732 (7th Cir. 1999). The *Pickering* balancing test "ensure[s] that public employers do not use authority over employees to silence discourse, not because it hampers public functions but simply because superiors disagree with the content of the employee's speech." *Coady*, 187 F.3d at 732 (citations omitted). Factors considered in the *Pickering* balancing test include "whether the statement would create problems in maintaining discipline by immediate supervisors or harmony among co-workers; "whether the speech impeded the employee's ability to perform daily . . . responsibilities," and "the time, place and manner of the speech." *Id.* (citing *Wright v. Illinois Dept. of Children & Family Services*, 40 F.3d 1492, 1502 (7th Cir. 1994) and *Rankin v. McPherson*, 483 U.S. 378, 390 (1987)).

Judge Brown's column and podcast appearance occurred when he was retired and held no judicial duties. For the time, place, and manner *Pickering* factor, this off-duty speech favors Judge Brown. *Id.* at 733 (holding that "there was nothing disruptive about the time, place and manner" in which an off-duty firefighter displayed a political sign atop his car in front of the firehouse). Nor did Judge Brown identify as active member of the Illinois Judiciary. Two of the four sentences in his author bio expressly state he is retired. (Compl. Ex. 2 at 10) ("The Honorable James R. Brown, now retired . . ."; "Brown was then elected . . . before retiring.").

13

This also weighs in Judge Brown's favor. *Coady,* 187 F.3d at 733 (plaintiff's not speaking as a firefighter mitigated government's claim of disruption).

Judge Brown's speech did not disrupt the Cook County Circuit Court or the Illinois Judiciary writ large. Certainly, no actual disruption occurred. Judge Brown filled an otherwise vacant "high volume courtroom," presiding over 1,000 cases in Cook County Traffic Court and 40 felony preliminary hearings over just six weeks without complaint. (Compl. Ex. 3 at 2; Decl. of Hon. James R. Brown in Supp. of Mot. for a Prelim. Injunc. ¶¶ 16–17). To show potential disruption, Defendants rely on speculation and conjecture that Judge Brown's speech somehow creates a pervasive distrust of him and the Illinois judiciary. (Defs.' Mem. at 17–18). That is not enough.

A prediction of disruption must be supported with evidence, not mere speculation. *Gazarkiewicz v. Town of Kingsford Heights*, 359 F.3d 933, 944 (7th Cir. 2004) (holding a trial court record that "in no way quantifies disharmony, and more importantly, contains not a single instance of how town administration was disrupted" insufficient to prevail in the *Pickering* balancing test). Even predictions of disruption based on public perception require evidence of that perception and its impact on government operations. *Jungels v. Pierce*, 825 F.2d 1127, 1132 (7th Cir. 1987) (reversing a 12(b)(6) dismissal in part because "[n]o evidence was presented concerning public perceptions and their impact, if any, on Jungels' ability to perform his duties as a civil service commissioner"). Defendants cite no evidence of actual disruption beyond the two bar association complaints. (Defs.' Mem. at 17).

14

Defendants' prediction that "the public could reasonably question his impartiality" is also conjecture unsupported by evidence. *Id.* Defendants go as far as to claim, without a scintilla of evidence, that an unidentified "broad swath" of 5.2 million people would "inevitably appear before Judge Brown" and question his impartiality during his one-year term in Cook County Traffic Court.[7] *Id.* at 18. If so, the Cook County Traffic Court must truly be a "high-volume" courtroom. (Compl. Ex. 3 at 2). "All this is speculation, and not all of it is plausible speculation." *Jungels* 825 F.2d at 1132. Defendants fail to meet their burden under the *Pickering* balancing test. Defendants violated Judge Brown's First Amendment rights.

### C. Application of the *Pickering* balancing test at this stage of the litigation is premature

To assess their Fed. R. Civ. P. 12(b)(6) motion, Defendants ask this Court to conduct the *Pickering* balancing test now. (Defs.' Mem. at 15–20). That request is premature. Because disruption of government operations must be supported by evidence, "application of the *Pickering* balancing test will be possible only after the parties have had an opportunity to conduct some discovery." *Gustafson v. Jones*, 117 F.3d 1015, 1019 (7th Cir. 1997). As Defendants' predictions of disruption are wholly speculative, *Pickering* balancing is premature. Defendants' motion to dismiss should be denied.

---

[7] "With a population of approximately 5.2 million people, [Cook County] is the second most populous county in the nation." *About Cook County*, Cook Cnty. Gov't, https://www.cookcountyil.gov/about-cook-county (last visited April 17, 2024).

**V. Defendants violated Judge Brown's Fourteenth Amendment rights by circumventing Illinois' established system of judicial discipline.**

Judge Brown holds a protected property interest in his recall appointment and Defendants summarily denied him procedural due process through the Illinois judicial disciplinary system. At the threshold of a procedural due process claim, a plaintiff must show a cognizable liberty or property interest in his position. *Bradley v. Vill. of Univ. Park*, 59 F.4th 887, 902 (7th Cir. 2023). After establishing a property interest, he must then show he was denied pre-deprivation procedures including notice and an opportunity to be heard. *Id.* (quoting *Board of Regents v. Roth,* 408 U.S. 564, 569–70, (1972). Defendants denied Judge Brown procedural due process by unilaterally removing him with a one-sentence order. (Compl. Ex. 8)

**A. Judge Brown holds a cognizable property interest in his judicial recall appointment.**

Judge Brown was appointed to a fixed judicial term and subject to the Illinois Constitution's two-tiered disciplinary system. "Property interests subject to procedural due process protection are not limited by a few rigid, technical forms" and are "secured by existing rules or understandings." *Perry v. Sindermann*, 408 U.S. 593, 601 (1972) (citations omitted). Nondiscretionary rules creating a liberty interest are typically prescribed by statutes requiring notice and an opportunity to be heard. *E.g. Casna v. City of Loves Park*, 574 F.3d 420, 424–25 (7th Cir. 2009) (holding liberty interest created by 65 ILCS 5/10-1-18(a)'s requirement that removal be "for cause upon written charges and after an opportunity to be heard in [her] own defense"). The Illinois Supreme Court recognizes that "an understanding or an

16

expectation that that person will serve for the given length of time and will be removed for only the stated reasons" creates property rights in public employment. *E. St. Louis Fed'n of Teachers, Local 1220 v. E. St. Louis Sch. Dist. No. 189 Fin. Oversight Panel*, 178 Ill. 2d 399, 417–418 (1997). Judge Brown understood and expected to serve a fixed judicial term from December 15, 2025, to December 7, 2026. (Compl. Ex. 5). Judge Brown understood that Illinois Code of Judicial Conduct provides the "basis for regulating [his] conduct through the Illinois Judicial Inquiry Board and the Illinois Courts Commission." Ill. Code of Jud. Conduct, Preamble & Scope at ¶ 3. Defendants set the defined term of Judge Brown's tenure. (Compl. Ex. 5). The Illinois Code of Judicial Conduct sets the rules for sitting judges. And since 1970, the Illinois Constitution has prescribed the disciplinary procedural due process for judicial discipline. Judge Brown possesses a property interest in his recall appointment and Defendants violated the Fourteenth Amendment by removing Judge Brown without notice or hearing.

## VI. Defendants are not entitled to qualified immunity.

Defendants' claim of qualified immunity is subjected to a two-pronged test. *Rainsberger v. Benner*, 913 F.3d 640, 647 (7th Cir. 2019). First the court asks "whether the facts, read in favor of the non-moving party, amount to a constitutional violation." *Id.* Next the court determines "whether the constitutional right was clearly established at the time of the alleged violation." *Id.* "To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent." *District of Columbia v. Wesby,* 583 U.S. 48, 63 (2018). This

17

precedent may be found in federal and state court decisions. *Sutterfield v. City of Milwaukee*, 751 F.3d 542, 573 (7th Cir. 2014) (state law is "relevant as to what the defendants might have thought the law, including the federal constitution, permitted them to do"). Defendants are not entitled to qualified immunity because both Constitutional rights are clearly established.

### A. Retaliating for pre-employment speech is a clearly established First Amendment violation.

Removing Judge Brown from the bench because he wrote an article while retired was a clearly established First Amendment violation on January 26, 2026. "Under the doctrine of qualified immunity, liability is not predicated upon the existence of a prior case that is directly on point." *Markham v. White*, 172 F.3d 486, 492 (7th Cir. 1999) (internal citations omitted). This is particularly true in cases where government retaliates for employee speech, which are usually fact sensitive. *Coady*, 187 F.3d at 734. Retaliating for speech made prior to the start of employment that did not disrupt the government employer is a First Amendment violation. *Harnishfeger v. United States*, 943 F.3d 1105, 1120 (7th Cir. 2019). In *Harnishfeger*, the plaintiff wrote and published a book about "monsters" she met while working as a phone sex operator. *Id.* at 1109–10. After publishing the book, plaintiff began work with the Indiana National Guard. *Id.* at 1110. Once the book was discovered, she was fired. *Id.* at 1111–12. The court denied qualified immunity to plaintiff's supervisor because the pre-employment speech did not cause any actual or future disruption. *Id.* at 1121. Like the plaintiff in *Harnishfeger*, Judge Brown spoke before he returned to the bench. Defendants lack evidence of actual or future

18

disruption. Defendants violated Judge Brown's clearly established First Amendment rights. Qualified immunity should be denied.

**B. Judge Brown's right to have disciplinary matters adjudicated by the Illinois Courts Commission is clearly established by Defendants' own court.**

The judicial disciplinary system is well established in Illinois. The Judicial Inquiry Board investigates and prosecutes and the Illinois Courts Commission adjudicates. Illinois Const., Art. VI, § 15(b)–(e). The Illinois Supreme Court clearly established it has "no involvement" in the adjudication of judicial discipline. *People ex rel. Harrod*, 69 Ill. 2d at 466. Yet after two bar associations alleged Judge Brown violated the Illinois Code of Judicial Conduct, Defendants adjudicated the complaint and sanctioned Judge Brown by removing him. By doing so, Defendants forfeit any claim of qualified immunity.

**VII. Principles of federalism and comity are not implicated by the narrow relief sought by Judge Brown.**

Judge Brown wants three things in this lawsuit: to return to the bench to finish the remainder of his one-year judicial recall term ending on December 7, 2026; a declaration that his constitutional rights were violated; and damages, particularly for the lost pension value and expenses borne out of returning to the bench only to be wrongfully removed forty-two days later. (Compl. Prayer for Relief). This relief is narrowly defined in time and scope—addressing a single case in a single moment in time. This relief is not of the breadth and depth that the Seventh Circuit has deemed appropriate for abstention. "The right of a party plaintiff to choose a Federal court where there is a choice cannot be properly denied." *New Orleans Pub.*

19

*Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 358–59 (1989) (citations omitted). Defendants are justices on Illinois' highest court. (Compl. ¶¶ 7, 9–14). Judge Brown has no other choice but federal court.

## A. Traditional abstention doctrines do not apply.

This Court should exercise the jurisdiction it possesses. (Compl. ¶ 15). The Supreme Court recognizes four abstention doctrines: *Pullman, Burford, Younger*, and *Colorado River*. *SKS & Assocs.* 619 F.3d at 677 (citations omitted). But "abstention from the exercise of federal jurisdiction is the exception, not the rule." *Id.* (citing *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 813 (1976)). *Younger* abstention requires federal courts to refrain from hearing cases that interfere ongoing state proceedings.[8] *Younger v. Harris*, 401 U.S. 37 (1971). The doctrine covers civil matters, including attorney disciplinary proceedings. *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432–35 (1982). Here, no disciplinary proceedings ever occurred nor are any ongoing. Defendants made sure of that by circumventing the Illinois judicial disciplinary system. (Compl. ¶¶ 41–45). *Younger* abstention does not apply.

## B. *Younger's* underlying principles of federalism and comity are not implicated here.

Judge Brown's case is distinguished from the Seventh Circuit's expansive abstention decisions. Even without ongoing state proceedings, the Seventh Circuit

---

[8] Defendants do not assert abstention under the other three doctrines. (Defs.' Mem. at 9–10). Nor are they applicable to this case.

20

sometimes relies on *Younger's* principles of comity and federalism to abstain. *SKS & Assocs.* 619 F.3d at 678–80. When a plaintiff challenges administrative state court procedures under the First Amendment, a federal court could abstain "[u]nless and until the state courts have proven unwilling to address an alleged First Amendment violation." *Courthouse News Serv.* 908 F.3d at 1071 (declining to hear a First Amendment challenge regarding the speed at which the Cook County Circuit Court released pleadings to the press). Judge Brown does not challenge judicial disciplinary procedures in Illinois. He cannot challenge those procedures because they were circumvented by Defendants. The Illinois courts are unwilling to address the Constitutional violations; Defendants, justices on the state's highest court, committed them.

Hearing this case will not substantively interfere with the Illinois judicial system. When declining to exercise jurisdiction pursuant to *Younger* principles, courts in this Circuit consider the breadth and depth of the equitable relief sought. *Id.* at 1073. "Appropriate consideration must be given to principles of federalism in determining the availability and scope of equitable relief." *Id.* (quoting *Rizzo v. Goode*, 423 U.S. 362, 378–79). In *Courthouse News Serv.*, plaintiff media company sought faster access to court filings by challenging the procedures of the Cook County Circuit Court Clerk. *Id.* at 1067. The Seventh Circuit abstained because this relief required continuous monitoring of a clerks' office that processed more than

21

one million cases annually.[9] *Id.* at 1071, 1074–75. Judge Brown does seek oversight and monitoring of one million cases. Nor does Judge Brown seek to change established court procedures. If the judicial procedures had been followed, this litigation would not be necessary.

Like *Courthouse News Serv.*, the relief sought in *SKS & Assocs. v. Dart* eclipses Judge Brown's relief sought. 619 F.3d. at 676–77. In *SKS & Assocs.*, a residential rental property manager challenged a Chicago court ordered eviction moratorium during the winter months. *Id.* The Seventh Circuit abstained under *Younger* principles because plaintiff sought "to have a federal court tell state courts how to manage and when to decide a category of cases pending in the state courts." *Id.* at 679. Judge Brown does not seek to affect the decision of an entire category of cases. He asks this Court to hold Defendants accountable to the Constitution in one narrow and defined instance. Abstention pursuant to *Younger* principles also occurred in *J.B. v. Woodward.* 997 F.3d at 721. There, plaintiff sued state child services workers for reports made during plaintiff's ongoing divorce proceedings. *Id.* at 717–79. Although no abstention doctrine was "an exact fit," the Seventh Circuit upheld abstention to avoid disruption of "local family law proceedings —a robust

---

[9] Plaintiff Courthouse News Service brought nearly identical claims in the Fourth, Eighth, and Ninth Circuits which all declined abstention and allowed the cases to proceed. *Courthouse News Serv. v. Planet*, 750 F.3d 776, 786, 781 (9th Cir. 2014); *Courthouse News Serv. v. Schaefer*, 2 F.4th 318, 325 n.2 (4th Cir. 2021); *Courthouse News Serv. v. Gilmer*, 48 F.4th 908, 914 (8th Cir. 2022). The Seventh Circuit distinguished its decision from the Ninth Circuit in part because its concern that Courthouse News Service would use a Seventh Circuit decision to leverage other state courts to grant instant access to filings. *Courthouse News Serv.*, 908 F.3d. at 1074–75. There is no such concern in this case.

area of law traditionally reserved for state and local government." *Id.* No such tradition prevails here. Judge Brown avails himself to the tradition of 42 U.S.C. § 1983, enacted to enforce Constitutional rights against state agents who "might, in fact, be antipathetic to the vindication of those rights." *Mitchum* 407 U.S. at 242. Judge Brown seeks relief specifically confined to Defendants' violations of his First and Fourteenth Amendment rights. Abstention does not "clearly serve an important countervailing interest" of federal-state relations. *Courthouse News Serv.* 908 F.3d at 1071. This court should exercise its jurisdiction and hear this case.

## CONCLUSION

The judicial disciplinary system in Illinois is clearly established. Defendants knowingly and purposefully circumvented that system to remove Judge Brown from the bench. In doing so, they violated Judge Brown's First Amendment right to speak on a matter of public concern and Fourteenth Amendment right to due process as established by the Illinois Constitution. Judge Brown satisfies all factors necessary for preliminary injunction. Defendants' motion to dismiss should be denied. The 1970 Illinois Constitution Convention asked, "who should judge the judges." The answer today is this Court.

Dated: April 17, 2026                    Respectfully submitted,


*Brendan J. Philbin*

Jeffrey M. Schwab
Brendan J. Philbin*
PA Bar No. 307276
Liberty Justice Center
7500 Rialto Blvd.
Suite 1-250
Austin, TX 78737
512-481-4400
jschwab@ljc.org
bphilbin@libertyjusticecenter.org

*admitted pro hac vice*

*Counsel for Plaintiff*

24

## CERTIFICATE OF SERVICE

I certify that the foregoing documents were filed electronically with the Court's Case Management/Electronic Case Filing (CM/ECF) system. The Court and/or Clerk of Court may serve and give notice to counsel by CM/ECF electronic transmission.

The 17th day of April 2026.

Brendan J. Philbin
LIBERTY JUSTICE CENTER
7500 Rialto Blvd.
Suite 1-250
Austin, TX 78735
(512) 481-4400
bphilbin@libertyjusticecenter.org

*\* Admitted pro hac vice*
*Attorney for Plaintiff*

25